JOSEPH F. MASSELLI AND JULIETTE G. MASSELLI
*vs.*
DANIEL FENTON AND FLORENCE R. FENTON

Androscoggin.   Opinion, June 27, 1961.

*Clifford & Clifford,* for plaintiff.

*Berman, Berman and Berman,*
*Simon Spill,* for defendant.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ. WEBBER, J. did not sit.

OPINION: TAPLEY, J.

TAPLEY, J. On report under *Rule 72 (c)*, *Maine Rules of Civil Procedure, 155 Me. 479, 573.*

> "Report of Interlocutory Rulings. If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein."

The plaintiffs, Joseph F. and Juliette G. Masselli, instituted an action at law against defendants, Daniel and Florence R. Fenton, alleging the creation and continuance of a private nuisance. The action was entered at the September Term, 1959 of the Superior Court, within and for the County of Androscoggin, previous to the effective date of the Maine Rules of Civil Procedure. Defendants presented a motion for leave to file supplemental pleadings seeking equitable relief against the plaintiffs on a claim arising out of the transaction which was the subject matter of the original action by the plaintiffs relating to the property concerned in the original action. Leave was granted to file supplemental pleadings. The defendants filed their supplemental pleadings raising an issue equitable in its nature. A hearing was had before a single justice on the supplemental pleadings after a pre-trial conference. At the pre-trial conference the following stipulations and agreements were entered into:

> "1. That a certain contract executed only by the defendants, a cashier's check for $1,000 and the correspondence between counsel for the respective parties, comprising 36 exhibits and which have been numbered 1 to 36 inclusive are all admitted in

evidence and comprise the whole evidence for consideration by the court.

2.    That the plaintiffs have waived any tender of the sum of $7500 representing the balance of the alleged purchase price and which the defendants will be ordered to pay into court if it is found that they are entitled to a conveyance.

3.    That Simon Spill, Esq. at all times had full power and authority to act for and bind his clients, the defendants, in negotiating and completing the alleged contract now in issue.

4.    That no issue is presented as to the time of tender of said check for $1,000.

5.    That if final decision on the alleged contract be for the defendants, judgment is to be for the defendants, on all matters involved in docket #2597; but if final decision on the alleged contract be for the plaintiffs, the court will order severance of issues and remand docket #2597 for further proceedings in the Superior Court solely upon the issues tendered by plaintiffs' original writ and a general denial thereto."

Defendants, in their motion for equitable relief, allege that following a pre-trial conference on the original action, the parties, through their respective attorneys, by correspondence, negotiated for the purchase and sale of the realty concerned in the original nuisance action and that as a result of said negotiations it was agreed plaintiffs' action against the defendants be dismissed.  It is alleged that plaintiffs agreed to sell to the defendants the property for the sum of $8500. and that the plaintiffs refused so to do, therefore the defendants are seeking specific performance and damages.  The evidence in the case, as presented to the presiding Justice, is comprised of correspondence.  The Justice below found no valid existing contract upon which defendants could base their demand for specific performance and ordered the cause "remanded for further pro-

ceedings in the Superior Court solely upon the issues tendered by the plaintiffs' original writ and a general denial thereto."

The aggrieved parties, on motion and with consent of the presiding Justice, bring this interlocutory order to this court for review under procedure prescribed by Rule 72 (c) of Maine Rules of Civil Procedure. In the view we take of this case, the issue is not whether the statute of frauds is satisfied but, rather, did the parties intend that the contractual relationship be evidenced by a formal written contract? The evidence is comprised of written correspondence between the respective attorneys. Does the substance of the correspondence constitute a valid legal and enforceable agreement between the parties, or does it fall within the category of negotiations preparatory to the execution of a contract? The various letters speak of purchase price, down payment, exclusion of certain personal items, a question regarding an easement and other matters which are commonly concerned in negotiating for the sale of real estate in preparation of incorporating agreed conditions and terms into a written agreement to sell and buy. There are some portions of these written communications which are germane in determining whether the parties intended the correspondence to constitute a valid and enforceable contract. In a letter, Attorney Clifford, representing the proposed seller (Masselli) wrote to Attorney York, one of the attorneys representing the buyer (Fenton):

> "We would enter into a contract to buy and sell as of June 15th when the balance of the purchase price was paid.
>
> "* * * * I also think it would be desirable to have all the parties execute a buy and sell agreement containing these terms."

Later Attorney Spill, who came into the case for the Fentons, wrote to Attorney Clifford, saying:

"I am of the opinion, and I think correctly, that this deal can go through without any question by the drafting of an agreement to buy and sell, your client to execute and deliver to the Fentons or their nominee a good and sufficient warranty deed with merchantable title, free and clear of any and all incumbrances, including contents, as agreed for the figure which you and Brother York agreed upon. * * *.

"So far as I am concerned, and I am sure this would be true of Bob, any standard agreement for purchase and sale would be satisfactory and whether you hold the money or Bob holds the money would be immaterial to me.

"I am right in the middle of this and where both of you have got as far as you did, it seems regrettable to me that this cannot be consummated. * * * * *

"* * * * * * I can assure you that once this agreement to buy and sell has been executed, your clients will have sold their property and the deal put through on or before June 15th."

Again, Spill writes to Clifford and says:

"Confirming my telephone conversation to you on the above-captioned matter, may I suggest that you draft the agreement of purchase and sale and mail it to this office."

Attorney Clifford drafted a contract, sent it to Attorney Spill and said, in part:

"In accordance with your letter of March 5th, I have proceeded to draft a proposed contract and am enclosing a single copy of it for your approval.

"I understand that as soon as you get back, you will review it and if it appears to you to be all right, I will have the Massellis execute duplicate originals and forward same to you for the Fentons' execution."

Attorney Spill, in due time, examined the contract for sale and then wrote Attorney Clifford suggesting certain changes in the submitted written contract. One of the changes was in the nature of an amendment in the following language:

"Consummation of this agreement shall take place in York County or Cumberland County on notice by either of Sellers' attorneys, Robert York, Esq., Old Orchard Beach, Maine, or Simon Spill, Esq., Biddeford, Maine, to the office of Clifford & Clifford, Lewiston, Maine."

After preliminary negotiations, an agreement to buy and sell was drafted. This agreement was signed by defendants and presented to the Massellis for their signatures. They refused to execute the agreement and thereupon the matter came to a conclusion.

In this case the intentions of the parties are the determining factor. Did the parties intend that the written correspondence constitute the contract between them, or was their intention such that the correspondence was in its nature exploratory to the end that the negotiations carried on between the attorneys for the parties would result in a written contract which would bear testimony of their legal obligations? The rule to be applied to the factual aspects of this case is found in *Mississippi and Dominion Steamship Company, Limited* vs. *Swift, et al., 86 Me. 248-258, 259*:

"From these expressions of courts and jurists, it is quite clear that, after all, the question is mainly one of intention. If the party sought to be charged intended to close a contract prior to the formal signing of a written draft, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If on the other hand, such party neither had nor signified such an intention to close the contract until it was fully

expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. The expression of the idea may be attempted in other words: if the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the onsummation (sic) of the negotiation, there is no contract until the written draft is finally signed.

"* * * * * * * If a written draft is proposed, suggested or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract."

See *M. N. Landeau Stores, Inc.* vs. *Daigle, et al.,* 157 Me. 253. A most comprehensive treatment of the subject is found in *122 A. L. R., 1217* and *165 A. L. R., 756.*

"The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce and material terms cannot be left for future settlement." *17 C. J. S., Contracts, Sec. 49, Page 390.*

Preliminary negotiations as to the terms of an agreement do not constitute a contract. *Citizens' Committee of the North End* vs. *Hampton, 114 (2nd), 388 (Conn.).*

When the instrument leaves certain terms and conditions to be agreed upon and contemplates the execution of a final contract, it is not a contract that can be specifically enforced. *Patch, et al.* vs. *Anderson, et al., 151 P. (2nd), 644 (Cal.).*

"Whether the parties are merely negotiating the contract, or entering into a present contract, is

purely a question of intention." *Cohen, et al.* vs. *Johnson, et al., 91 F. Supp., 231-235.*

In *Mid-Continent Petroleum Corporation* vs. *Russell, 173 F. (2nd) 620,* the court said, on *page 622*:

"Mere preliminary negotiations respecting the terms of an agreement do not constitute an obligatory contract. Preliminary negotiations leading up to the execution of a contract are to be distinguished from the contract itself. No contract is complete without the mutual assent of the parties to all essential elements of the agreement. The minds of the parties must meet and unite on all essential elements before an effective contract is created."

We have carefully examined the evidence and find that it bears testimony of the fact that the negotiations carried on between the parties never developed into a contractual relationship.

The findings and interlocutory order of the presiding Justice were not error.

*Case remanded to Superior Court for further proceedings upon issues tendered by plaintiffs' original writ (Docket #2597) and a general denial thereto.*