2007 ME 116

**WELLS FARGO HOME MORTGAGE, INC.**

v.

**Christopher E. SPAULDING et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 13, 2007.

Decided: Aug. 16, 2007.

---

Jonathan M. Flagg, Esq., Flagg Law, PLLC, Portsmouth, NH, for plaintiff.

John S. Campbell, Esq., Campbell & Associates, P.A., Portland, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER CALKINS, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] Christopher E. and Lorraine M. Spaulding appeal from a judgment entered in the District Court (Portland, *Eggert, J.*) granting and certifying as final, pursuant to M.R. Civ. P. 54(b)(1), a summary judgment on Wells Fargo Home Mortgage, Inc.'s mortgage foreclosure complaint. The Spauldings argue that certification was improper because their unresolved counterclaims are inextricably intertwined with the merits of the complaint. The Spauldings also contend that genuine disputes of material fact should have precluded the court from granting a summary judgment on Wells Fargo's foreclosure complaint. We agree with both contentions and vacate the judgment of the District Court.

## I. CASE HISTORY

[¶ 2] In February 2001, the Spauldings executed and delivered to Wells Fargo a promissory note for $160,000.

[¶ 3] In January 2004, Wells Fargo filed a complaint in District Court alleging that the Spauldings had been in default on their mortgage since November 1, 2003, and requesting a foreclosure judgment. Later, Wells Fargo filed a motion for a summary judgment. The court (*Horton, J.*) held:

> [Wells Fargo's] motion for summary judgment is granted as to all issues except as to the adequacy of notice [of default and right to cure], and is denied as to that issue. Because that issue is purely one of law, [the Spauldings] are granted partial summary judgment on the issue of adequacy of notice.

[¶ 4] The Spauldings allege that the parties subsequently reached a loan modification agreement. The alleged agreement

provided that Wells Fargo would reinstate the mortgage and the Spauldings would reamortize the debt so that arrearages would be included in a higher monthly payment.

[¶ 5] Wells Fargo filed a motion for reconsideration of the summary judgment order. In response, the Spauldings argued that Wells Fargo had waived the foreclosure by accepting payments from the Spauldings pursuant to the alleged loan modification agreement. The court denied Wells Fargo's motion.

[¶ 6] In September 2005, nearly a year after the court denied its motion to reconsider, Wells Fargo filed a new complaint in District Court. Wells Fargo alleged the same default as in the first foreclosure action, but with a corrected notice of default and right to cure. The Spauldings filed an answer and a nine-count counterclaim, in which they alleged the existence of a loan modification agreement and provided evidence of loan payments submitted and accepted thereunder.

[¶ 7] Wells Fargo filed a motion for a summary judgment on the complaint and the counterclaims. Wells Fargo argued that no written and signed loan modification agreement existed, but acknowledged accepting payments from the Spauldings subsequent to the first foreclosure action. The court (*Eggert, J.*) granted Wells Fargo's motion for a summary judgment as to the complaint, but not to the counterclaims. The court stated, in pertinent part:

> The [Spauldings] are presently in default on the note, the payment for November 1, 2003 still remaining due, and therefore they have breached the conditions of the mortgage.
>
> . . . .
>
> [The Spauldings] argue that [Wells Fargo's] foreclosure claim has already been decided against [Wells Fargo] and the complaint should be dismissed according

to the doctrine of res judicata. *Johnson v. Samson Construction Corp.,* [1997 ME 220], 704 A.2d 866 (Me.1997). Defendant's reliance on that case is not well founded because in *Johnson* the defendants obtained a judgment by default with prejudice. Here, the previous decision of Judge Horton expressly held that the foreclosure judgment was granted in all aspects except that proper notice was not given. In other words, the debt remained and was collectible once the notice defect was cured. The defect has been cured and [Wells Fargo] is entitled to judgment.

. . . .

> As permitted in Rule 54(b)(1) and finding that there is no just reason for delay, this judgment shall be entered as a final judgment as to [Wells Fargo's] Complaint for foreclosure. [The Spauldings'] counterclaims, if successful, have no bearing on the validity or merits of the foreclosure and would result in an award of monetary damages, which [Wells Fargo] would be obligated to pay without reference to the foreclosure. Trial on the [Spauldings'] counterclaims may be had and scheduled in the ordinary manner.

[¶ 8] The Spauldings then filed a motion to alter or amend the judgment and requested further findings as to the Rule 54(b)(1) certification. The Spauldings requested, *inter alia,* that the court make findings on their estoppel defense, which claimed that a loan modification agreement had been reached and that subsequent mortgage payments had been accepted by Wells Fargo. The court denied the Spauldings' motion, stating:

> The [Spauldings'] defense of estoppel is defeated by the operation of the Statute of Frauds. No obligation to change the terms of payment of the note by the [Spauldings] could become binding until

the changes were set forth in writing and signed by the parties.

The basis for the immediate entry of Judgment is adequately set forth in the Judgment and requires no further factual findings.

The Spauldings then filed this appeal.

## II. LEGAL ANALYSIS

### A. Certification

■ [¶ 9] The Spauldings argue that the court improperly entered final judgment on Wells Fargo's foreclosure claim because the unresolved counterclaims are intertwined with the merits of the foreclosure.

[¶ 10] Wells Fargo contends that the record supports the certification because the statute of frauds eliminates all but one of the counterclaims raised by the Spauldings and the remaining claim would be unaffected by the outcome of the present appeal.

■ [¶ 11] Certification embodies both the express determination that there is no just reason for delay and the entry of a partial final judgment. *Cole v. Peterson Realty, Inc.*, 432 A.2d 752, 753 n. 1 (Me. 1981). Certification is authorized by M.R. Civ. P. 54(b)(1), which states in pertinent part:

when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■ [¶ 12] We have said that "a Rule 54(b)(1) partial final judgment order should be entered only in limited and special circumstances," and that "[b]ecause there is a strong policy against piecemeal review of litigation, there must be a good reason for the certification." *Guidi v. Town of Turner,* 2004 ME 42, ¶ 9, 845 A.2d 1189, 1192. The specific findings and reasoned statement by the trial court explaining the certification allow us "to determine whether the facts of this case constitute such an unusual circumstance that the merits of an interlocutory appeal should be considered before all pending claims are resolved." *Id.* ¶ 10, 845 A.2d at 1192.

■ [¶ 13] We review the partial final judgment certification for an abuse of discretion. *Id.* If we determine that the trial court made proper findings justifying the certification, we will decide whether to reach the merits of the interlocutory appeal by considering a variety of factors. *Id.* ¶ 12, 845 A.2d at 1192–93.[1]

[¶ 14] Here, the court adequately stated its reasons for certification: the Spauldings' "counterclaims, if successful, have no bearing on the validity or merits of the

---

1. The factors include:
   — The relationship of the adjudicated and unadjudicated claims;
   — The possibility that the need for review may be mooted by future developments in the trial court;
   — The chance that the same issues will be presented to us more than once;
   — The extent to which an immediate appeal might expedite or delay the trial court's work;
   — The nature of the legal questions presented as close or clear;
   — The economic effects of both the appeal and any delays on all of the parties, including the parties to appeal and other parties awaiting adjudication of unresolved claims; and
   — Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

   *Guidi v. Town of Turner,* 2004 ME 42, ¶ 12, 845 A.2d 1189, 1193 (quotation marks omitted).

foreclosure and would result in an award of monetary damages, which [Wells Fargo] would be obligated to pay without reference to the foreclosure."

[¶ 15] However, the factual and legal entanglement of the adjudicated and unadjudicated claims in the complaint and the counterclaim render the certification problematic in this case. Wells Fargo's complaint requesting a judgment of foreclosure is directly challenged by the Spauldings' nine-count counterclaim. The Spauldings assert in their counterclaim that Wells Fargo entered into and breached a loan modification agreement with them subsequent to the first foreclosure action. If successful on their counterclaims, the Spauldings would be entitled to remain in their home, in addition to receiving monetary damages. *Cf. Fleet Nat'l Bank v. Gardiner Hillside Estates, Inc.*, 2002 ME 120, ¶¶ 3, 13, 802 A.2d 408, 410, 412 (affirming certification of a foreclosure judgment where counterclaims were limited to monetary damages, and, if meritorious, would not eliminate liability under the mortgage). Wells Fargo's argument that it would ultimately defeat the counterclaims due to the statute of frauds is irrelevant in determining whether certification is appropriate. Because it does not serve the purposes of Rule 54(b)(1) to certify the judgment of foreclosure, the certification was improvident.

## B. Summary Judgment

[¶ 16] Implicit in our conclusion that certification was improvident are findings that directly bear upon the appropriateness of the summary judgment granted to Wells Fargo. Thus, rather than dismiss the appeal as interlocutory, in the interests of judicial economy and clarity, we address the issues that interconnect the court's certification and grant of a summary judgment. *See Maine Appellate Practice* § 304(c) at 169 (2005).

[¶ 17] The Spauldings contend that genuine issues of material fact include whether Wells Fargo: (1) entered into a loan modification agreement; (2) elicited and accepted $6491 from the Spauldings after the commencement of the first foreclosure based upon representations that the mortgage was being reinstated; and (3) breached the loan modification agreement. The Spauldings argue that the statute of frauds is not a barrier to the recognition of the loan modification agreement because of their part performance of the agreement.[2]

[¶ 18] Wells Fargo argues that the Spauldings' default on their mortgage is res judicata, and that this was established as a final judgment by the court in the first foreclosure action. Thus, Wells Fargo contends, the Spauldings cannot assert a valid claim to keep the property and avoid foreclosure. Wells Fargo argues that the alleged loan modification agreement was oral, and therefore, cannot be enforced because it falls within the statute of frauds.

[¶ 19] We review the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom judgment has been entered to decide whether the parties' statements of material facts and the referenced record evidence reveal a genuine issue of material fact. *Rice v. City of Biddeford*, 2004 ME 128, ¶ 9, 861 A.2d 668, 670.

---

2. The defense of waiver of foreclosure pursuant to 14 M.R.S. § 6204 (2006) is not raised by the Spauldings, but appears to be available because Wells Fargo accepted mortgage payments after the commencement of the first foreclosure action. *See Sav. & Loan Ass'n of Bangor v. Tear*, 435 A.2d 1083, 1085 (Me. 1981) ("A mortgagee waives its right to foreclose if it accepts tender of a late payment.").

[¶ 20] The statute of frauds requires that an "agreement that is not to be performed within one year from the making thereof" be in writing, or no action shall be maintained on the agreement. 33 M.R.S. § 51(5) (2006). The purpose of a statute of frauds "is to preclude false allegations of contract." 4 CAROLINE N. BROWN, CORBIN ON CONTRACTS, § 13.1 at 108 (rev. ed.1997). A writing that is sufficient to satisfy the requirements of the statute of frauds may be in almost any possible form. *Id.* § 23.1 at 761. The writing may be a receipt for money paid, letters to either party to the agreement, the record books of the business, or a computer entry. *Id.* § 23.1 at 762–64. Further, a writing is sufficient to satisfy the statute of frauds "even though it consists of several separate papers and documents, not all of which are signed by the party to be charged, and none of which is a sufficient [writing] in itself." *Id.* § 23.3 at 771.

[¶ 21] The court's analysis focused on the absence of a written and signed loan modification agreement and asserted that the statute of frauds defeated the Spauldings' affirmative defense that a modified agreement was reached. The court stated: "No obligation to change the terms of payment of the note by the [Spauldings] could become binding until the changes were set forth in writing and signed by the parties."

[¶ 22] The court erred in granting the summary judgment because it apparently concluded that the material facts in dispute were not relevant to the legal determination at issue. The court incorrectly concluded that the statute of frauds bars the Spauldings' defense because the alleged loan modification agreement is not packaged in a neatly drafted and signed document identifying itself as such. The agreement is not alleged to be purely oral, and the Spauldings produced multiple writings that could place the loan modification agreement outside the statute of frauds. Examples include, but are not limited to, the reamortized mortgage payments accepted by Wells Fargo subsequent to the first foreclosure action, correspondence between the parties alluding to a loan modification agreement, and computer entries in Wells Fargo's records suspending the foreclosure proceedings.

[¶ 23] Even if the alleged agreement is found to be within the statute of frauds, there are well-established exceptions to the statute of frauds, such as part performance. *Sullivan v. Porter,* 2004 ME 134, ¶ 10, 861 A.2d 625, 630. To remove the loan modification agreement from the statute of frauds for part performance, the Spauldings must establish by clear and convincing evidence (1) that the parties did enter into a loan modification agreement; (2) that the Spauldings partially performed on this agreement; and (3) that the performance was induced by Wells Fargo's misrepresentations, which may include acquiescence or silence. *See id.* ¶ 11, 861 A.2d at 630. The evidence provided by the Spauldings purporting to establish the existence and breach of a loan modification agreement with Wells Fargo, at a minimum, creates a genuine issue of material fact as to whether part performance occurred. *See Peoples Heritage Sav. Bank v. Pease,* 2002 ME 82, ¶¶ 1, 21, 797 A.2d 1270, 1272, 1276.

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.