MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2014 ME 4
Docket:       Pen-13-128
Argued:       November 20, 2013
Decided:      January 14, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
              JABAR, J.J.

JOHN MCCLARE

v.

JAMES J. ROCHA et al.

ALEXANDER, J.

[¶1]  John McClare appeals from a judgment entered by the Superior Court
(Penobscot County, *A. Murray, J.*) granting James J. Rocha's motion for summary
judgment on McClare's claim for specific performance of an alleged contract to
sell real estate.  McClare argues that the court erred in concluding that the emails
between McClare and Rocha did not contain all the material terms necessary to
form a contract for the sale of land.  He further argues that the emails constitute a
signed writing, thereby satisfying the statute of frauds, 33 M.R.S. § 51 (2013).

[¶2]  Because an email can constitute a writing pursuant to the statute of
frauds and the Maine Uniform Electronic Transactions Act, 10 M.R.S.
§§ 9401-9420 (2013), and because there are unresolved issues of material fact as to
whether a contract for the sale of land was formed, we vacate and remand.

## I. CASE HISTORY

[¶3] The following facts are drawn from the summary judgment record. McClare and Rocha hold property located in Bangor as tenants in common along with another party, Eugene Merrill. Each owns a one-third interest in the property, which is leased to Bangor Tire Company. Rocha is the president of Bangor Tire Company. The property is subject to a right of first refusal in favor of the other co-tenants in the event that any owner chooses to sell his interest in the property.

[¶4] Prior to June 30, 2010, McClare and Rocha, each assisted by counsel, had discussions regarding the possible sale of McClare's interest. On June 30, 2010, Rocha's attorney sent an email to McClare's attorney stating:

> The assessed value of the real estate is $430,600 . . . Jim [Rocha] believes that in this market, and particularly at that location, the assessed value probably is higher than the actual market value. Jim has offered to acquire the McClare interest for one third of the assessed value. . . . Jim says that he would be happy to speak with the McClares directly if that would facilitate an agreement. . . .

McClare's attorney responded on July 8, 2010, stating:

> My client accepts your clients offer of $143,533 for his 1/3 interest in the Bangor Tire property. Please let me know how much time you need if any to raise funds. I will prepare the deed. Let me know who will take title. . . .

[¶5] Rocha and McClare dispute whether there was any follow-up between July 8, 2010, and December 2010 regarding the purchase of the property.

[¶6]  In December 2010, Rocha received a letter from McClare addressed to him and Merrill in conformity with the right of first refusal.  The letter informed the recipients that McClare desired to sell his one-third interest in the Bangor property for $143,533 in cash or certified funds and that notice was given "subject to the offer of James J. Rocha to purchase [the] premises for $143,533 dated June 30, 2010, which offer was accepted by Mr. McClare on July 8, 2010, the benefit of which Mr. McClare has no intention of abandoning."  Neither Merrill nor Rocha exercised his right of first refusal.

[¶7]  On June 14, 2011, McClare filed a two-count complaint against Rocha and Merrill seeking specific performance of the contract for the sale of his interest in the property to Rocha or, in the alternative, partition of the property.  Rocha filed a motion for summary judgment on the specific performance claim, which the court granted, concluding that there "[had] been no valid contract formation."  The court then certified the partial summary judgment as a partial final judgment pursuant to M.R. Civ. P. 54(b)(1).  McClare timely appealed.

## II.  LEGAL ANALYSIS

### A.    Final Judgment Rule

[¶8]   A court may enter a final judgment as to fewer than all claims or parties in a matter only upon an express finding that there is no just reason for delay.  M.R. Civ. P. 54(b)(1).  We review a trial court's certification of a partial

final judgment for an abuse of discretion but do not simply accept the trial court's determination; there must be a valid justification for the determination. *Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 12, 36 A.3d 861. When the trial court has made factual findings justifying certification, we will then decide based on several factors whether to reach the merits of the appeal.[1] *See Wells Fargo Home Mortg., Inc. v. Spaulding*, 2007 ME 116, ¶ 13, 930 A.2d 1025.

[¶9] In this case, the Superior Court made specific findings justifying the entry of a partial final judgment and explained with particularity why no just reason for delay exists. *See Marquis*, 2011 ME 128, ¶ 12, 36 A.3d 861; *Guidi v. Town of Turner*, 2004 ME 42, ¶ 9, 845 A.2d 1189. Our review demonstrates that the Superior Court did not abuse its discretion in certifying the judgment. Accordingly, we will reach the merits of the appeal.

---

[1] When deciding whether the trial court correctly certified a partial final judgment, we consider the following factors:

- The relationship of the adjudicated and unadjudicated claims;
- The possibility that the need for review may be mooted by future developments in the trial court;
- The chance that the same issues will be presented to us more than once;
- The extent to which an immediate appeal might expedite or delay the trial court's work;
- The nature of the legal questions presented as close or clear;
- The economic effects of both the appeal and any delays on all of the parties, including the parties to the appeal and other parties awaiting adjudication of unresolved claims; and
- Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like.

*Marquis v. Town of Kennebunk*, 2011 ME 128, ¶ 13, 36 A.3d 861.

B.     Standard of Review

[¶10]  We review the Superior Court's grant of summary judgment de novo and will affirm only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Rose v. Parsons*, 2013 ME 77, ¶ 7, 76 A.3d 343. "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial."  *Rainey v. Langen*, 2010 ME 56, ¶ 23, 998 A.2d 342.

C.     Statute of Frauds

[¶11]  We first address whether the statute of frauds can be satisfied by an email communication, rather than a writing on paper or other material that gives it a physical existence.  The statute of frauds, 33 M.R.S. § 51, specifies that no action shall be maintained "[u]pon any contract for the sale of lands, tenements or hereditaments, or of any interest in or concerning them . . . unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith . . . ." Thus, regardless of whether there is adequate evidence in the record of a contract between McClare and Rocha to survive summary judgment, discussed below, any contract would be unenforceable unless it is contained in a writing meeting the requirements of the statute of frauds.  Almost any form of writing will satisfy the statute of frauds, including receipts, letters, record books, or computer entries.

*Wells Fargo Home Mortg.*, 2007 ME 116, ¶ 20, 930 A.2d 1025. "The sufficiency of a writing is a matter of law." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 12, 956 A.2d 104.

[¶12]  An email or other electronic record can constitute a signed writing based on the historically broad interpretation of the term "writing" in the statute of frauds and, separately, based on the Uniform Electronic Transactions Act (UETA), 10 M.R.S. §§ 9401-9420.  This conclusion is in accord with decisions in other jurisdictions.  *See Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1362 (Fed. Cir. 2005) (an email satisfies the California statute of frauds); *Cloud Corp. v. Hasbro, Inc.*, 314 F.3d 289, 296 (7th Cir. 2002) (the sender's name on an email satisfies the signature requirement of the statute of frauds).[2]

[¶13]  The UETA provides that an electronic record, such as an email, cannot be denied legal effect or enforceability solely because it is electronic or because an electronic record was used in its formation.  10 M.R.S. § 9407(1), (2) (2013).  It mandates that if the law provides that a record must be in writing, an electronic record satisfies that requirement.  10 M.R.S. § 9407(3).  Furthermore,

---

[2]  *See also Gillis v. Wells Fargo Bank, N.A.*, 875 F. Supp. 2d 728, 735 (E.D. Mich. 2012) (holding that a letter and emails containing all material terms of a contract satisfy the statute of frauds); *Roger Edwards, LLC. v. Fiddes & Son, Ltd.*, 245 F. Supp. 2d 251, 261 (D. Me. 2003) (concluding that an email is sufficient to satisfy the statute of frauds under Maine law); *Waddle v. Elrod*, 367 S.W.3d 217, 228 (Tenn. 2012) (holding that emails between the parties satisfied the statute of frauds based on the Tennessee Uniform Electronic Transactions Act); *Tolle v. Lev*, 2011 SD 65, ¶¶ 13, 17, 804 N.W.2d 440, 445-46 (concluding that an email satisfies the statute of frauds but holding on alternative grounds).

the UETA provides that an electronic signature satisfies a law requiring a signature. 10 M.R.S. § 9407(4).

[¶14] Whether the UETA is applicable to a specific transaction depends on whether the parties to the transaction have agreed to conduct the transaction by electronic means. 10 M.R.S. § 9405(2) (2013). This is determined by examining the context and circumstances of the transaction, as well as the parties' conduct. 10 M.R.S. § 9405(2). The absence of an explicit agreement to conduct the transaction by electronic means is not determinative; however, it is a relevant factor to consider.

[¶15] In this case, McClare and Rocha disagree on whether they agreed to conduct the transaction by electronic means. However, the use of email by both sides without concurrent reservation or qualification indicates at least a dispute as to the material fact of whether there was some agreement to conduct the transaction by electronic means. Prior email communication regarding the sale of this property is relevant in determining whether there was consent, although the parties' prior course of conduct is not determinative. *See* 10 M.R.S. § 9405(3).

D.     Contract Formation

[¶16] Having held that the statute of frauds will not bar the enforcement of a contract for the sale of land based on an exchange of emails, we turn to examine whether there is sufficient evidence of creation and mutual assent to such a

8

contract to withstand summary judgment. In order to obtain specific performance of a contract, there must first be a contract to enforce. *Sullivan v. Porter*, 2004 ME 134, ¶ 12, 861 A.2d 625. A contract exists when the parties "mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite." *Id*. ¶ 13. Whether a contract exists, the intent of the parties in entering into a contract, and whether a breach occurred are questions of fact. *Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041.

1.     Necessary Material Terms and Definitiveness

[¶17]  To survive summary judgment on Rocha's assertion that, as a matter of law, the communications between the parties contained insufficient information to satisfy the right of first refusal obligation and to create a contract, McClare was required to present the evidence from which a fact-finder could conclude that a contract was formed. The emails identify the property to be sold, the purchase price, and the parties to the transaction.[3]

[¶18]  Rocha argues that those terms are insufficient as a matter of law to form a contract for the sale of land. The Superior Court granted Rocha's motion for summary judgment based on its determination that, pursuant to *Sullivan*,

---

[3] Contrary to Rocha's contentions, there is no ambiguity regarding who the parties to the transaction are. Although McClare's reply email inquires about who will take title, it is clear that Rocha will be the one purchasing the interest. Even if Rocha directs another party, likely a corporate entity, to take title to the property on his behalf, he is still a party to the transaction because he is the one orchestrating the agreement and paying for the real estate.

2004 ME 134, ¶ 14, 861 A.2d 625, the emails lacked two essential terms to a contract for the sale of land: the amount of a down payment and the terms of financing. Although the missing information regarding the plans for payment could convince a fact-finder that the parties had not, in fact, formed a contract, their absence does not, as a matter of law, preclude the presence of a contract. Rocha's reliance on *Sullivan* to preclude formation of a contract is misplaced. In *Sullivan*, when a jury found that a contract existed, we reviewed the trial record and noted that the "essential material terms" to a contract for the sale of land, including the amount of the down payment and the terms of financing, were present. *Id.* This statement was intended to illustrate that there was sufficient evidence in that particular case to support a finding that a contract existed. *Sullivan*, however, does not mandate that all contracts for the sale of land must include such terms.[4]

[¶19] The basic elements of a contract for the sale of land must include identification of the parties, the property, and the purchase price. *See Des Brisay v. Foss*, 162 N.E. 4, 6 (Mass. 1928) ("A memorandum to satisfy the statute of frauds . . . must contain the terms of the contract agreed upon—the parties, the locus (if an

---

[4] In *Sullivan v. Porter*, 2004 ME 134, ¶ 14, 861 A.2d 625, we cited to *A.B.C. Auto Parts, Inc. v. Moran,* 268 N.E.2d 844, 847 (Mass. 1971), in our discussion of terms included in a contract for the sale of land. *A.B.C. Auto Parts* states that the essential elements to a contract for the sale of land are "the nature of the transaction, the parties, the locus of the property, and the purchase price," and that if no payment terms are included, an agreement to pay cash is implied. 268 N.E.2d at 847. The Superior Court's interpretation of *Sullivan* is at odds with the *A.B.C. Auto Parts* opinion.

interest in real estate is dealt with), in some circumstances the price . . . ."); Restatement (Second) of Contracts § 131 cmt. g (1981) ("The 'essential' terms of unperformed promises must be stated; 'details or particulars' need not."). The absence of details beyond these three basic terms is relevant to an analysis of whether there was mutual assent but, absent separate agreement of the parties, will not preclude litigation as to the factual existence of a contract.

### 2. Mutual Assent to be Bound

[¶20] "A manifestation of mutual assent, express or implied, is essential to the formation of a contract." *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 216 (Me. 1973). Preliminary negotiations as to the terms of a future agreement do not constitute a contract. *See Smile, Inc. v. Moosehead Sanitary Dist.,* 649 A.2d 1103, 1105 (Me. 1994); *Masselli v. Fenton*, 157 Me. 330, 336, 172 A.2d 728 (1961). "Whether the parties are merely negotiating the contract, or entering into a present contract, is purely a question of intention." *Masselli*, 157 Me. at 336-37. The absence of a formalized contract does not affect the binding nature of a potential contract if the parties intended to close the contract prior to a formal writing. *Id.* at 335-36; Restatement (Second) of Contracts § 27 (1981).

[¶21] The intention of the parties should be gathered from the language of any agreement, viewed "in the light of the circumstances under which it was made," including the use of the words "offer" and "acceptance." *Forbes*, 307 A.2d

at 216. Other relevant circumstances include the extent to which an express agreement has been reached on all terms to be included; whether the contract is of a type that is usually put in writing; whether it needs a formal writing for its full expression; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance. Restatement (Second) of Contracts § 27 cmt. c.

[¶22] In this case, there remain sufficient disputes about material facts relevant to mutual assent to preclude deciding the issue on a motion for summary judgment. The language used in the emails, in isolation, indicates an intent to sell and buy the one-third interest in the property for one-third of the assessed value of the property. The emails specifically use the terms offer and acceptance, which, although not determinative, weigh in favor of contract formation. *See Forbes*, 307 A.2d at 216. The use of these terms take on greater weight in this case because they were exchanged between attorneys who, it may be inferred, knew the significance of using the terms and intended their consequences. Furthermore, there is no indication from the emails that another, more definitive contract would be executed. *See Masselli,* 157 Me. at 336, 172 A.2d 728 ("If a written draft is proposed, suggested or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract." (citations omitted)).

[¶23] Other factors indicate that the parties did not intend to be bound by the agreement. For example, purchase and sales agreements tend to be put into a more formal writing, there are often standard contracts used in such transactions, the emails are not particularly detailed, and the amount of money involved in the transactions is fairly large. Also, although the lack of contract terms addressing the amount of any down payment and the type of financing may be evidence indicating that the parties did not intend to form a contract, the lack of such terms is not determinative of the issue. Finally, the language in the purported offer that "Jim says he would be happy to speak with McClare directly if it would facilitate an agreement" appears to provide evidence that the reference to the sale price contained in the same email was not intended to comprise all of the details of a not-yet-completed agreement.

[¶24] Considering the evidence in the light most favorable to McClare as the non-prevailing party, *Rainey*, 2010 ME 56, ¶ 23, 998 A.2d 342, the emails and the circumstances surrounding the parties' course of dealings are sufficient indicators of the formation of a contract to survive summary judgment; however, there remain genuine issues of material fact as to whether the parties agreed to conduct the transaction by electronic means and whether the parties, in fact, formed a contract. Thus, the court erred in entering summary judgment.

The entry is:

> Judgment vacated. Remand to the Superior Court for further proceedings consistent with this opinion.

_____

**On the briefs:**

Joel A. Dearborn, Esq., Joel A. Dearborn, Sr., Esq., P.A., Brewer, for appellant John McClare

Glen L. Porter, Esq., and Megan E. Randlett, Esq., Eaton Peabody, Bangor, for appellee James J. Rocha

**At oral argument:**

Joel A. Dearborn, Esq., for appellant John McClare

Glen L. Porter, Esq., for appellee James J. Rocha

Penobscot County Superior Court docket number RE-2011-110
FOR CLERK REFERENCE ONLY