STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. BANSC-CV-2015-195

DARREN MARTIN and
SHERI MARTIN,

      Plaintiffs and Counterclaim
      Defendants

v.

KENNETH ORT and
DEBRA ORT,

      Defendants and Counterclaim
      Plaintiffs.

**ORDER AND DECISION ON PLAINTIFF/
COUNTERCLAIM DEFENDANTS'
MOTION TO DISMISS**

Before the Court is Plaintiff/Counterclaim Defendants Darren Martin and Sheri Martin's

("the Martins") Motion to Dismiss all seven counts of Defendant/Counterclaim Plaintiffs

Kenneth Ort and Debra Ort's ("the Orts") Counterclaim. The Court has reviewed the parties'

filings and denies the Motion.

## BACKGROUND[1]

In the early Fall of 2008, the Orts, a husband and wife, found a listing for the sale of a

property located at 145 Cedar Breeze Center in Glenburn, Maine (the "property"). The property

was owned by the Martins, also husband and wife. (Def.'s Countercl. ¶¶ 1-4.) The Orts wished to

proceed with owner financing from the Martins for the purchase of the property. (Def.'s

Countercl. ¶ 6.) The Martins and Orts entered into an agreement whereby the Orts would

purchase the property for the price of $159, 000. (Def.'s Countercl. ¶¶ 7-8.) The Orts made a

$17,000 down payment and agreed to make monthly payments of $1,800 for six months while

they attempted to obtain bank financing for the remaining balance of the purchase price. (Def.'s

---

[1] For purposes of this Motion, the Court considers the following facts asserted in the Counterclaim as true. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43.

1

Countercl. ¶ 8.) The Orts also obtained homeowners' insurance and paid the property taxes. (Def.'s Countercl. ¶ 9.)

By March 2009, six months later, the Orts were still unable to obtain bank financing. (Def.'s Countercl. ¶ 10.) Mr. Martin indicated to the Orts that he would extend the owner-financing agreement. (Def.'s Countercl. ¶ 11.) The Martins and Orts then agreed that the Orts would continue making payments toward the purchase of the property, but at an increased rate of $2,000 per month. (Def.'s Countercl. ¶ 12.) The Orts stated it was the understanding of both parties that the Martins would finance the purchase of the property by the Orts and that ownership would eventually pass to the Orts. (Def.'s Countercl. ¶ 13.)

In the Counterclaim, the Orts refer to a lease entered into in April 2009, and claim that this lease was subsequently orally modified in 2009.[2] (Def.'s Countercl. ¶ 70.) The lease describes the property as leased premises and states that the term of the lease is month to month beginning on April 1, 2009 for the rent of $2,000 per month payable to the Martins. (Pl.'s Second Substituted Ex. B ¶¶ 1-3.) It also includes provisions stating that all improvements to the property shall be the property of the Martins, and that the Orts shall pay all utilities, taxes, insurance, and costs of repairs and maintenance. (Pl.'s Second Substituted Ex. B ¶¶ 4-7.) Finally, the lease includes an "Entire Agreement, Severability" clause (the parties both refer to this as the integration clause), which states, in pertinent part, "[t]his Lease expresses the entire agreement between the parties, and supersedes all previous discussions and understandings between them. There are no terms or conditions of this Lease that are not reduced to writing by both parties." (Pl.'s Second Substituted Ex. B ¶ 18.)

---

[2] Because this lease is referenced in the Counterclaim, and because the document is central to evaluating the Orts' claims, the Court may consider this lease without converting this Motion to one for summary judgment. *See Moody,* 2004 ME 20, ¶ 11, 843 A.2d 43.

Based on their understanding that they were buying the property, the Orts paid for a number of substantial improvements to the property: they replaced the existing trailer with a year-round home, installed a well on the property, and installed a septic system. (Def.'s Countercl. ¶¶ 14, 16, 18, 20, 22, 28.) For each one of these improvements, the Martins gave the Orts verbal permission, assisted them in performing the improvements, and never indicated at any time that the Orts were making improvements on land that they were only leasing and would not eventually own. (Def.'s Countercl. ¶¶ 15, 17, 29, 21, 23-27.)

In or about July 2013, Mr. Ort delivered a $5,000 check to Mr. Martin and told him that the Orts would be making larger monthly payments in order to finish paying for the property sooner. (Def.'s Countercl. ¶ 29.) Although the Martins told the Orts not to make larger payments because of adverse tax consequences, the Martins did not tell the Orts that the payments were for anything other than the payment for the purchase of the property. (Def.'s Countercl. ¶ 30.)

Sometime thereafter, the Orts presented the Martins with an itemization of all the money they had paid towards the purchase of the property and indicated that the payment in September of 2014 would be the last because the purchase price would have been paid in full by then. (Def.'s Countercl. ¶ 31.) Approximately one week later, Mr. Martin contacted the Orts and for the first time denied that the payments were for the purchase of the property and claimed they were in fact only for a leasehold interest. (Def.'s Countercl. ¶ 32.) Although they disagreed with Mr. Martin's characterization, the Orts continued to make payments. (Def.'s Countercl. ¶ 33.)

In May of 2015, the Orts met with the Martins and explained how they had made all the improvements with the Martins knowledge, permission, and assistance, and the Martins never suggested that Orts' payments were merely towards a lease. (Def.'s Countercl. ¶ 34.) The Orts

3

then offered to sell the house to the Martins or make additional payments to the Martins for the purpose of purchasing the property. (Def.'s Countercl. ¶ 35.)

On or about September 3, 2015, Mr. Martin asked the Orts to make a written offer to complete the sale of the Property. (Def.'s Countercl. ¶ 36.) Through counsel, the Orts made a written offer to the Martins on October 2, 2015. (Def.'s Countercl. ¶ 37.) The Martins responded to the offer by filing the Complaint in the present lawsuit. (Def.'s Countercl. ¶ 38.) On October 27, 2015, the Orts answered and asserted a counterclaim consisting of the following counts: I) fraud, II) fraudulent concealment, III) negligent misrepresentation, IV) breach of contract, V) unjust enrichment, VI) quantum meruit, and VII) declaratory judgment. On November 16, 2015, the Martins filed the Motion to Dismiss all counts of the Orts' Counterclaim.

## STANDARD OF REVIEW

Dismissal of a counterclaim, like a complaint, is proper only when the counterclaim fails to state a claim for which relief may be granted. *See* M.R. Civ. P. 12(b)(6). A motion to dismiss tests the legal sufficiency of the counterclaim, *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217, and is a pure question of law. *Persson v. Dep't of Human Servs.*, 2001 ME 124, ¶ 8, 775 A.2d 363. To be sufficient, a counterclaim need only consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741 (quotation marks omitted). The court accepts facts, but not legal conclusions, as true. Harvey, *Maine Civil Practice* § 12:11 at 415-16 (3d ed. 2011). The court views the pleadings in the "light most favorable to the [non-moving party] to determine whether it set forth elements of a cause of action or alleges facts that would entitle the [non-moving party] to relief pursuant to some legal theory." *Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 10, 997 A.2d 741 (quotation

4

marks omitted). "A dismissal should only occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted).

## DISCUSSION

Underlying each count of the Counterclaim is the allegation that after signing the April 2009 lease the Martins made statements or representations to the Orts that the monthly payments the Orts were making were toward the purchase price of the Property. The admissibility, truth, and/or relevancy of these statements or representations is the key dispute underlying the various arguments made by each party regarding the sufficiently of each count of the Counterclaim.

### I.     Count I: Fraud

Count I of the Counterclaim alleges fraud on the part of the Martins. For this claim to survive the Motion, the Orts' Counterclaim must allege facts that claim the Martins:

> "(1) [made] a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance upon it, and (5) [the Orts] justifiably [relied] upon the representation as true and [acted] upon it to [their] damage . . . . Reliance is unjustified only if the [Martins] [knew] the representation [was] false or its falsity [was] obvious to [them]."

*Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209. Fraud must be pleaded with particularity, but malice, intent, knowledge, and other conditions of the mind may be averred generally. M.R. Civ. P. 9(b). This is to ensure "the defendant is fairly apprised of the elements of the claim." 2 Harvey, *Maine Civil Practice* § 9:2 at 384.

Here, the Orts have set forth the circumstances of the Martins' alleged fraud with sufficient particularity to give the Court, and the Martins, a "clear picture" of the manner, character, and causes of the fraud. *Semo v. Goudreau*, 147 Me. 17, 20-21, 83 A.2d 209, 211

5

(1951) ("The statement should be so full and explicit as to show the court a clear picture of the particulars of the fraud, — the manner in which the party was misled, or imposed upon, — the character and causes of the accident, or mistake, and how it occurred. Without such a statement . . . the court can not grant relief or even hear evidence in the matter."). As detailed above, the Orts allege the Martins told them the monthly payments being made by the Orts were payments toward the purchase price of the property. This alleged affirmative statement alone is sufficiently particular to show at this procedural window a false representation of a fact that is clearly material. The Counterclaim also alleges the Orts relied on this statement in making improvements and down payments to their detriment.

The allegations in the Counterclaim are sufficient to survive a motion to dismiss because the Court cannot say as a matter of law that it appears from the Counterclaim "beyond doubt that the [Orts are] entitled to no relief under any set of facts that [they] might prove in support of [their] claim." *Moody,* 2004 ME 20, ¶ 7, 843 A.2d 43.[3]

---

[3] Moreover, a failure to disclose or an omission by silence may be equivalent to an affirmative false representation if the plaintiff proves: (1) active concealment of the truth; or (2) a special relationship that imposes a duty to disclose; or a (3) statutory duty to disclose. *See Picher v. The Roman Catholic Bishop of Portland,* 2009 ME 67, ¶¶ 30-32, 947 A.2d 286. Even if none of these elements are present, fraud based on a party's silence may still be actionable depending on the facts of the case. *Eaton v. Sontag,* 387 A.2d 33, 38 (Me. 1978) ("Furthermore, it is not fraud for one party to say nothing respecting any particular aspect of the subject property for sale where no confidential or fiduciary relation exists and where no false statement *or acts to mislead the other* are made . . . ." (emphasis added)); Alexander *Maine Jury Instruction Manual* § 7-30 (2015); *accord Gnagey Gas & Oil Co. v. Pa. Underground Storage Tank Indemnification Fund,* 82 A.3d 485, 501 (Pa. Commw. Ct. 2013) ( "Although silence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud, suppression of the truth with the intent to deceive (concealment) does.").

While the Orts simply make the conclusory statement that the Martins had a legal and/or equitable duty to disclose, there are sufficient facts pleaded to, at this stage, provide a basis for fraud not based on an affirmative statement. The Court makes particular note of the allegation that the Martins withheld a truth in order to gain the benefit of the Orts' mistaken belief—the value of the improvements. Because it depends on the facts whether there is fraud based on silence, absent a duty to disclose, a motion to dismiss where facts of silent fraud have been pleaded should be denied. *See Sontag,* 387 A.2d 33, 38. The facts alleged could also prove a confidential relationship or active concealment, even though neither theory was asserted. *Harkness v. Fitzgerald,* 1997 ME 207, ¶ 9, 701 A.2d 370 ("A confidential

6

The Martins argue that any oral statements made by them are not sufficient for the Orts to survive a motion to dismiss because their (the Martins) statements would be inadmissible pursuant to the parol evidence rule. This argument fails because the parol evidence rule does not bar evidence where a party alleges fraud, misrepresentation, or mistake.[4] 6-25 *Corbin on Contracts* § 25.20 (2015) ("It is widely agreed that oral testimony is admissible to prove fraud or misrepresentation, mistake or illegality. This exception to the parol evidence rule applies even if the testimony contradicts the terms of a completely integrated writing."); *Francis*, 2000 ME 173, ¶ 43, 760 A.2d 209. Moreover, the parol evidence rule applies in the context of interpreting a contract; it does not apply where a party seeks to introduce evidence of subsequent oral modifications. *See Me. Mortg. Co. v. Tonge*, 448 A.2d 899, 902 (Me. 1982) ("[A]ny contract may be modified by subsequent agreement of the parties so long as the new agreement itself complies with the requirements of a valid contract."); *accord Beal Bank S.S.B. v. Krock*, No. 97-2241, 1998 U.S. App. LEXIS 22051 (1st Cir. Sep. 3, 1998) (holding that under Massachusetts law, the parol evidence rule does not bar consideration of parol evidence where it could be found that a new oral contract was entered into by the parties that supersedes the original contract).

---

relationship exists when there is an "actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties.").

[4] Even more accurately, the parol evidence rule is a rule of substantive law, not a rule of evidence, and so even if it applied here, the rule addresses the consideration of the evidence not the admissibility. *Spaulding v. Am. Realty Co.*, 121 Me. 493, 496, 118 A. 322, 323 (1922) ("The so-called parol evidence rule is attended with a confusion and an obscurity which make it the most discouraging subject in the whole law of Evidence. . . . First and foremost, the rule is in no sense a rule of evidence, but a rule of substantive law. It does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved. . . . What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all." (quotation marks omitted)).

7

## II.     Count II: Fraudulent Concealment

Count II of the Counterclaim alleges fraudulent concealment on the part of the Martins. To the extent Fraudulent Concealment is a separate tort, as opposed to an equitable remedy for overcoming a statute of limitation defense[5], to establish fraudulent concealment, the Orts must assert facts that can show (1) the Martins failed to disclose; (2) a material fact; (3) where a legal or equitable duty to disclose exists; (4) with the intention of inducing the Orts to act or to refrain from acting in reliance on the non-disclosure; and (5) that the Orts did in fact rely on it to their detriment. *See Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1287. Again, any tort of fraud must be pleaded with particularity, but malice, intent, knowledge, and other conditions of the mind may be averred generally. M.R. Civ. P. 9 (b). To the extent fraudulent concealment is a separate tort, it has been adequately pled in the counterclaim.

## III.     Count III: Negligent Misrepresentation

Count III of the Counterclaim alleges negligent misrepresentation on the part of the Martins. To survive a motion to dismiss on a claim of negligent misrepresentation, the Orts must allege facts that show the Martins (1) supplied false information for the guidance of the Orts in their business transaction; (2) in the course of their business, profession, employment, or transaction in which they had a pecuniary interest; (3) failed to exercise reasonable care or competence in obtaining or communicating the information; and then show (4) that they, the Orts, justifiably relied upon the information;(5) causing them, the Orts, to suffer a pecuniary loss. *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (adopting the formulation of the tort as

---

[5] *See Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 21, 819 A.2d 1014 ("Fraudulent concealment is an equitable remedy recognized by courts as a potential means to ameliorate the harsh application in individual cases' of the medical malpractice statute of limitations."); *Conroy v. Roman Catholic Bishop of Portland*, No. CV-13-204, 2013 Me. Super. LEXIS 251 (Nov. 21, 2013) ("Fraudulent concealment is not a separate tort but a means of overcoming the statute of limitations") (quotation marks omitted); *but see* Alexander, *Maine Jury Instruction Manual* § 4-9 at 4-27 (2015 ed.) (providing jury instructions for the "claim" of fraudulent concealment).

8

stated in the Restatement (Second) of Torts § 552(1) (1977)); *accord Rand v. Bath Iron Works Corp.,* 2003 ME 122, ¶ 13, 832 A.2d 771.

Again, the Orts plead the Martins affirmatively told them their monthly payments were being applied toward the purchase price of the property. The fact that the Martins now contend the transaction was never for the sale of property is sufficient evidence of its falsity. The alleged facts detailing the Martins' behavior towards the Orts when the Orts made improvements to the property satisfy the third, forth, and fifth elements of negligent misrepresentation. Because the Orts allege the Martins made at least one false statement that, in part, orally modified that 2009 lease, it is not necessary to address the Martins' arguments this claim should be dismissed because it is based on the Martins' failure to disclose their state of mind. However, even though the Law Court has not addressed this issue directly, it does appear the law relating to failure to disclose information, discussed in the above section on fraud, is equally applicable to negligent misrepresentation claims. Alexander *Maine Jury Instruction Manual* § 7-31 ("The law relating to failure to disclose information, discussed in the comments to the fraud instruction, appears equally applicable to negligent misrepresentation claims.").

The Court also does not find that the 2009 lease requires dismissal of this Count. Although it is true that parties to a contract are deemed to have read the contract and are bound by its terms, *Francis*, 2000 ME 173, ¶ 42, 760 A.2d 209, it is also true the parol evidence rule does not apply on the issue of subsequent oral modifications to a contract or claims of negligent misrepresentation. 6-25 *Corbin on Contracts* § 25.20; *Francis*, 2000 ME 173, ¶ 43, 760 A.2d 209; *Me. Mortgage Co.*, 448 A.2d 899, 902.

## IV.    Count IV: Breach of Contract

The Orts' fourth count is for breach of the contract created when the 2009 contract was allegedly orally modified.[6] The Martins argue the breach of contract claim fails as a matter of law for two reasons. First, the Martins argue the alleged oral modification is not enforceable because it lacks consideration. Second, the Martins argue the evidence of an oral modification is inadmissible because the 2009 lease was fully integrated and the parol evidence rule bars admission of evidence altering or contradicting a fully integrated contract.

### A.    *Consideration*

To establish a breach of contract, Plaintiffs must first establish the existence of a binding contract, *McClare v. Rocha*, 2014 ME 4, ¶ 16, 86 A.3d 22, and then establish the following elements: "(1) breach of a material term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. U.S. Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. A contract exists where there is mutual assent supported by consideration. *E.g., In re Estate of McPhee*, 2006 ME 38, ¶ 7, 904 A.2d 401. Consideration is a bargained-for exchange; a contract lacks consideration where the exchange is merely gratuitous. *Panasonic Communs. & Sys. Co. v. Dep't of Admin., Bureau of Purchases*, 1997 ME 43, ¶ 12, 691 A.2d 190. "It matters not from whom the consideration moves or to whom it goes. If it is bargained for and given in exchange for the promise, the promise is not gratuitous." *Restatement (Second) of Contracts* § 71 cmt. e (1981). A contract can be modified so long as the modification also complies with the aforementioned requirements. *Panasonic Communs. & Sys. Co.*, 1997 ME 43, ¶ 13, 691 A.2d 190.

Taking what is pleaded as true, an exchange of values has occurred: per the agreement as modified after March 2009, the Orts allege they paid a monthly amount for the purpose of

---

[6] Because an allegation that a contract was created is a mixed question of law and fact, the Court is not required to accept it as true for purposes of this motion. Harvey, *Maine Civil Practice* § 12:11 at 415-16.

10

obtaining title and that the Martins agreed to take a certain amount of money per month to relieve themselves of this title. It does not matter, for purposes of consideration, that the monthly rental payments before the contract was modified are of the same dollar amount as the monthly payments towards the purchase of the property—a new obligation has still been created for both parties.

B.      *Integration Clause & the Parol Evidence Rule*

The Orts' assertion that the 2009 lease was orally modified sometime after March 2009 is the crux of nearly every count of the Counterclaim, including the count for breach of contract. The Martins contend that this Court should dismiss this count as a matter of law because the 2009 lease contains an integration clause that bars any evidence of oral modification.

"The parol evidence rule operates to exclude from judicial consideration extrinsic evidence offered to alter, augment, or contradict the unambiguous language of an integrated written agreement." *Handy Boat Serv., Inc. v. Prof'l Servs., Inc.*, 1998 ME 134, ¶ 11, 711 A.2d 1306. However, because the issue here is whether the Martins breached the contract as subsequently orally modified, the parol evidence rule does not apply. 6-25 *Corbin on Contracts* § 25.20; *Francis*, 2000 ME 173, ¶ 43, 760 A.2d 209; *Me. Mortg. Co.*, 448 A.2d 899, 902; *see Handy Boat Serv., Inc.*, 1998 ME 134, ¶ 11, 711 A.2d 1306 (applying the rule to interpretation of the language of a contract, not evidence of words or actions taking place after the contract was made). Therefore, this count survives the Motion to Dismiss.

**III.     Count V: Unjust Enrichment; Count VI: Quantum Meruit**

Counts V and VI of the Counterclaim allege unjust enrichment and quantum meruit. With respect to these counts, it appears the Martins' argument is that any evidence of the alleged oral modification to the 2009 lease would be inadmissible and therefore there is no support for the

11

equitable claims. As addressed at length above, the parol evidence rule only applies to interpretation of contracts. Absent any other arguments, the only role of the Court is to analyze whether the Counterclaim contains facts to support the elements of the two equitable claims.

To establish a claim for unjust enrichment, the Counterclaim must allege facts that can prove three elements: (1) a benefit was conferred upon the Martins by the Orts; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the *acceptance or retention* by the defendant of the benefit under such circumstances *as to make it inequitable* for the defendant to retain the benefit without payment of its value. *Id.* at 1144 (quoting *Estate of White,* 521 A.2d 1180, 1183 (Me. 1987)) (emphasis added). Here, the Orts have alleged that the Martins agreed the payments made by the Orts were for the purchase of the property and that the Martins gave permission for the Orts to make improvements. These facts satisfy the first and second elements, and the question of equity is not one to be resolved on a motion to dismiss. Therefore, this claim is properly set forth in the Counterclaim. Likewise, the Orts' quantum meruit claim is satisfactorily pleaded.[7]

## IV.    Count VII: Declaratory Judgment

The Orts have sufficiently pled the declaratory judgment count of their counterclaim.

## CONCLUSION

Therefore, for the aforementioned reasons, the Martins' Motion to Dismiss denied.

The Entry is:

1.    Plaintiff /Counterclaim Defendants' Motion to Dismiss Defendant/Counterclaim Plaintiffs' Counterclaim is **DENIED**.

---

[7] At least for purposes of this Motion, the difference between the two claims is not important and is satisfied with by same facts.

12

2.     This Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.


Dated: February 3 , 2016


Ann M. Murray, Justice
Maine Superior Court

13