STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
DOCKET NO. HOUSC-RE-16-003


Shelby D. Thomas et al.           )
                    Plaintiffs    )
                                  )
                                  )
v.                                )        ORDER ON MOTIONS
                                  )
                                  )
                                  )
Kent M. Willeger et al.           )
                    Defendants    )


Both parties now come before the court seeking enforcement of a settlement agreement

that each contends they entered into following mediation of the pending litigation on June 16,

2016.[1]

## BACKGROUND[2]

This litigation centers around the Pratt Cove Road, a graveled private road in Island Falls

that begins at an intersection with the Dow Farm Road and runs in a southeasterly direction

towards Mattawamkeag Lake. Both the Plaintiffs and the Defendants use the Pratt Cove Road to

access their properties. At a point near the intersection of the northerly boundary line of the

Plaintiffs' property and the Defendants' property, the Pratt Cove Road enters the Defendants'

property and continues along the shared boundary line of the Plaintiffs' and Defendants'

properties.

---

[1] Although only the Plaintiffs have filed a formal motion seeking enforcement of a settlement agreement, the Defendants' response includes a request that the court also declare that the parties reached a settlement and for that reason, the court has addressed this matter as though each party has applied to the court for relief.

[2] The background of the pending motion does not appear to be in dispute and this summary is taken from Plaintiffs' motion.

In the spring of 2014, a dispute arose between the parties regarding their respective rights in the Pratt Cove Road. This litigation appears to have been triggered by the Defendants' placement of two large boulders on the Pratt Cove Road approximately 70 feet north of the southerly boundary of the Plaintiffs' property. The boulders blocked access to the road beyond.

The Plaintiffs filed their suit seeking to quiet title to the easement described in their deeds; seeking to establish an easement over the Pratt Cove Road by adverse possession; seeking to establish a prescriptive easement over the Pratt Cove Road; seeking to establish title to the Pratt Cove Road as it is situated on the Defendants' property and seeking a declaratory judgment regarding their rights in the Pratt Cove Road.

The Defendants responded to the complaint and filed a counterclaim seeking a declaratory judgment that any easements described in the Plaintiffs' deeds were void or otherwise limited. The Defendants' pleadings did not seek to establish any particular rights in the Plaintiffs' deeded property interests.

The parties proceeded to mediation on June 16, 2016. Each party regarded the mediation as having been successful and each signed a "Memorandum of Understanding" that provided as follows:

### MEMORANDUM OF UNDERSTANDING

The undersigned confirm that as a result of the Mediation Session, held on June 16, 2016, the parties agree to settle their dispute for the following amount: <u>see attached Settlement Agreement.</u>

The respective parties agree to be bound by this settlement and agree to prepare and /or sign formal releases and any other documents needed to complete this mediated settlement.

The Settlement Agreement provided as follows:

### SETTLEMENT AGREEMENT

2

1. [The Defendants] will give a Perpetual Deed of Easement to the [Plaintiffs] (hereinafter Owners) establishing a right of way for ingress and ingress by people, motor vehicles, etc., terminating at the point where the [Defendants] placed the rocks. This Deed shall benefit the Owners, their heirs and assigns. It shall not extend to others claiming a right to use Pratt Cove Road and shall not include utilities.

2. The Easement shall give the Owners the right to repair and maintain the right of way but shall not include "paving" the road surface. All maintenance performed by Owners, their heirs and assigns, shall be at the Owner's expense.

3. Upon review of the Amended Plisga & Day Survey, dated October 13, 2008, the [Defendants] will acknowledge its accuracy provided no other boundaries, right of way or interests are affected.

4. The Amended Plisga & Day Plan will be prepared by Plisga & Day and recorded by Old Republic National Title Insurance Company at its expense.

5. The [Defendants] and the Owners will exchange Release Deeds wherein each will confirm the other parties' boundaries, per Amended Plan.

6. Width of Road-whatever it is now, to be plotted on Amended Plan.

7. Old Republic National Title Company will pay the [Defendants] $6,000 as consideration for the right of way.

8. The pending civil action will be dismissed upon the completion of items 1-7 above by both parties, with prejudice.

9. All parties will execute a Settlement Agreement setting forth the final terms once the Amended Plisga & Day Plan has been prepared and reviewed by all parties.

There were no other written agreements emanating from the mediation other than the forgoing "Memorandum of Understanding" and "Settlement Agreement".

Subsequent to mediation, the attorneys began drafting the various documents perceived to be necessary to implement their *settlement*. It appears that each side believed that a settlement had been achieved. However, during the exchange of documents, the Defendants presented a proposed deed to the Plaintiffs, the terms of which called for the Plaintiffs to convey a property

3

interest to the Defendants in that part of the gravel Pratt Cove Road that apparently fell upon land actually owned by the Plaintiffs and thereafter, things began to unravel.[3]

The Plaintiffs' took the position, that no part of the settlement agreement required them to convey anything to the Defendants. The Defendants' position appears to have been that an exchange of deeds was necessary in order to confirm the mutual rights in the existing gravel roadway and that such a conveyance was at least implied in the settlement agreement if not expressly set forth.

The parties are now before the court seeking an Order confirming their differing understandings of the settlement agreement.[4]

## DISCUSSION

As indicated above, both parties seek enforcement of *their* settlement agreement. Both parties agree that it is within the court's authority to order that a settlement agreement be enforced. The case law is well established. "Settlement agreements are analyzed as contracts, and the existence of a binding settlement is a question of fact. For a settlement agreement to be binding, the parties must have mutually intended to be bound by terms sufficiently definite to enforce. When parties report to the court that they have reached a settlement and have memorialized the terms of the agreement and expressed clear consent to those terms, that settlement becomes an enforceable agreement and, upon acceptance by the court, is incorporated as a judgment of the court". 2301 Cong. Realty, LLC v. Wise Bus. Forms, Inc., 2014 ME 147, ¶10, 106 A.3d 1131,1133 (internal quotations and citations omitted).

---

[3] This calls to mind the cliché that "the devil is in the details"!
[4] Although the Defendants did not expressly seek affirmative relief in their counterclaim, the court does not view this as foreclosing their right to seek enforcement of a settlement agreement that may not necessarily track the different counts set forth in a complaint or counterclaim.

4

It is also well established that "preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce and material terms cannot be left for future settlement." Masselli v. Fenton, 157 Me. 330, 172 A.2d 728. "When the instrument leaves certain terms and *conditions* (emphasis supplied) to be agreed upon and contemplates the execution of a final contract, it is not a contract that can be specifically enforced." *Id* at 336. "The parties must agree to the same thing in the same sense." Ouellette v. Bolduc, 440 A.2d 1042,1045. "A contract exists when the parties mutually assent to be bound by all its material terms, the assent is either expressly *or impliedly* (emphasis supplied) manifested in the contract, and the contract is sufficiently definite." McClare v. Rocha, 2014 ME 4, ¶16, 86 A.3d 22, 28. Whether or not a binding contract exists is a question of fact. Marie v. Renner, 2008 ME 73, ¶7, 946 A. 2d 418, 420.

In so far as the questions of what the parties actually intended and whether they shared the same intent are concerned, it seems worthy of note that the parties have submitted this matter to the court on the basis of written submissions, primarily consisting of attorney affidavits and correspondence between lawyers together with proposed deeds and some survey materials.

In this court's view, these submissions are inadequate to permit the court to make a factual determination of the parties' intentions. While certainly attorneys can speak for their clients in many respects and can bind their clients to certain obligations, even the words of the lawyers leave the court with uncertainty in this case.

For example, within the Memorandum of Agreement, notwithstanding that some of the words upon the printed page appear to document a settlement, there are also these words,

"The respective parties agree to be bound by this settlement and agree to prepare and/or sign formal releases and any other documents needed to complete this mediated settlement."

This part of the *settlement* doesn't identify what those "other documents" might be. On the face of the materials that are before the court, it now appears that the parties have a different understanding of what documents are contemplated. In particular, the Plaintiffs do not appear to share the Defendants' view that a deed of conveyance from them to the Defendants for that part of the gravel road that falls within their deeded interests would be among the documents to be prepared.

The court also has lingering questions about the import of ¶ 6 of the Settlement Agreement. The "width of the road" would appear to be a significant component of any settlement agreement particularly in light of the apparent intention to add it to an Amended Plan that presumably would have ongoing significance. Also, ¶5 suggests that the Amended Plan would serve to confirm the "other parties' boundaries". In the court's mind, this begs the question of whether the parties' post settlement boundaries will be defined by their previously deeded interests or by the Amended Plan depicting the "width of the road-whatever it is now"?

The court also has questions regarding the import of ¶9 that reads, "All parties will execute a Settlement Agreement setting forth the *final terms* (emphasis supplied) once the Amended Plisga & Day Plan has been prepared and reviewed by all parties." Is the Settlement Agreement referred to in ¶9 another, new and different settlement agreement? If the Memorandum of Agreement and the Settlement Agreement executed on June 16, 2016 constitutes a binding contract, as each party contends, why is another Settlement Agreement "setting forth the final terms" necessary? In one possible view, the very suggestion that the

parties have yet to execute the *final settlement agreement* indicates that they have not yet achieved a final settlement.

Also, ¶3 appears to give the Defendants' a right of review of the Amended Plan and conditions their obligation to acknowledge its accuracy upon their satisfaction that "no other boundaries, right of way or interests are affected." Paragraph 9 seems to give the Plaintiffs the same right of review. Bearing in mind that the Amended Plan was not even in existence at the time that mediation concluded, what did the parties intend if there was disagreement regarding what it depicted? The provisions of the Settlement Agreement appear to contemplate more than mere ministerial execution of specific documents and appear to leave the parties with rights of review that create pre-conditions for their final agreement.

Finally, if the court's understanding of the "lay of the land" is correct, and it's understanding that part of the gravel surface of the Pratt Cove Road as it now exists lies within the Plaintiff's deeded interest, doesn't this leave something of a loose end? Did the parties simply intend that the settlement agreement not address this potential loose end?

On the basis of the written submissions before it, this court is left with too many unanswered questions to permit it to declare as a fact that on June 16, 2016, the parties shared a sufficiently precise and definite common understanding of the essential terms of their "settlement agreement" to permit the court to enforce it at the behest of either party. In this court's view, it remains an open question regarding whether the parties had achieved a true meeting of the minds at their mediation. When the written submissions, without more, do not disclose the existence of a binding settlement agreement as a matter of law, an evidentiary hearing is required to afford the trier of fact a fuller evidentiary basis to determine if the parties had reached a binding settlement agreement. (See Marie v. Renner, 2008 ME 73, 946 A.2d 418)

7

The entry shall be: The Plaintiffs' Motion to Enforce Settlement Agreement is denied de bene and without prejudice to seeking to establish the existence and enforcement of a binding settlement agreement. The Defendants' request for enforcement of a settlement agreement is also denied de bene for the same reasons.

The Clerk is directed to schedule an evidentiary hearing on the parties' request for enforcement of a settlement agreement.

Date: March 27, 2018

E. Allen Hunter
Justice, Superior Court, Active Retired