MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2021 ME 10
Docket:      BCD-20-142
Argued:      December 9, 2020
Decided:     February 23, 2021

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

CORINTH PELLETS, LLC

v.

ARCH SPECIALTY INSURANCE CO. et al.

HORTON, J.

[¶1]  Corinth Pellets, LLC (Corinth), appeals from the entry of a partial final judgment, *see* M.R. Civ. P. 54(b)(1), in the Business and Consumer Docket (*Duddy*, *J.*) dismissing its complaint alleging that a catastrophic fire loss at Corinth's wood pellet mill is covered under a commercial property insurance policy issued by Arch Specialty Insurance Company (Arch).  Also parties to this appeal are Varney Agency (Varney), named in Corinth's complaint as a defendant, and intervenors Maine Superintendent of Insurance and the Maine Attorney General (collectively, the State).  Varney joins Corinth and the State in appealing the dismissal of Corinth's complaint and appeals also from the court's dismissal of Varney's cross-claim for common law indemnification against Arch.

[¶2]  Arch maintains that the fire loss is not covered because it occurred after the policy term had expired.  Corinth contends that the fire loss is covered because Arch failed to notify Corinth of its intention not to renew the policy as required by Maine's surplus lines insurance law, 24-A M.R.S. § 2009-A (2020), and the policy was therefore automatically renewed at the end of the stated term.  Arch counters that the statute does not require an insurer to give notice of its intent not to renew unless the insurer also intends to cancel the policy before it expires.  Arch argues in the alternative that Corinth's interpretation would leave the statute unconstitutionally vague.

[¶3]  Agreeing with Arch's interpretation of the statute, the court dismissed Corinth's complaint for failure to state a claim on which relief could be granted pursuant to M.R. Civ. P. 12(b)(6) and did not address Arch's constitutional argument.  We vacate the court's judgment and remand for further proceedings.

## I.  BACKGROUND

[¶4]  We draw the following facts from Corinth's second amended complaint, viewed in the light most favorable to Corinth.  *Doe v. Bd. of Osteopathic Licensure*, 2020 ME 134, ¶ 3, 242 A.3d 182.

[¶5]  Corinth owned and operated a wood pellet mill in Corinth, Maine. For some years Corinth retained Varney as its insurance agent to advise Corinth on insurance issues and procure insurance on Corinth's behalf.  Arch issued to Corinth a surplus lines insurance policy[1] that covered "property loss, business interruption and extra expenses suffered from a loss event" at the mill.  Arch's policy had an initial term of January 13, 2017, to January 13, 2018, and was subsequently extended for three consecutive three-month terms, to September 18, 2018.

[¶6]  In early September 2018, a Varney agent alerted Corinth that Arch would not renew the policy following its termination on September 18.  The agent assured Corinth that he was in the process of finding a new insurance provider and that there was "[n]o need" for Corinth "to do anything on [its] end."

[¶7]  On September 17, 2018, the Varney agent notified Corinth that he could not provide a "firm quote" from any insurer.  Varney did not obtain substitute property insurance coverage for Corinth before September 19, 2018. Though Corinth knew by September 17, 2018, that Arch did not intend to renew

---

[1]  Though not defined in the statute, "surplus lines insurance" is generally understood to mean "[i]nsurance with an insurer that is not licensed to transact business within the state where the risk is located." *Surplus-Lines Insurance*, Black's Law Dictionary (10th ed. 2014).

4

the policy, at no point did Arch given written notice of its intent to Corinth or Varney.

[¶8]  On September 19, 2018, the day after the Arch policy's final expiration date, Corinth's wood pellet mill sustained a catastrophic fire that caused about $15 million in damage.  The fire met the definition of a "covered loss event" under the Arch policy.  Corinth provided Arch with "timely notice" of the fire as required by the policy, but Arch declined to participate in the investigation into its cause and origin.  Arch eventually denied coverage on the ground that, by the terms of the policy, coverage terminated on September 18.

[¶9]  That November, Corinth sent a letter to Arch claiming that the loss was covered because under Maine law Arch's failure to communicate its decision not to renew the policy in writing meant that the policy automatically renewed.  Arch maintained its denial of coverage.  Corinth requested proof that Arch provided notice of its intent not to renew the policy.  In December, Arch responded that it had communicated its intent only to a company called Quaker Special Risk.  However, Corinth did not know about this communication before Arch's December response and was not even aware of Quaker's existence until October 2018, when Corinth received a letter from Arch's adjuster mentioning the company.

[¶10]  On May 10, 2019, Corinth filed in the Penobscot County Superior Court a complaint that included six counts against Varney and two counts against Arch.[2]  Varney's answer asserted its affirmative defenses to Corinth's allegations and brought a cross-claim against Arch.  Arch moved to dismiss both claims.  On Corinth's application, the case was transferred to the Business and Consumer Docket in August 2019.  Later that month, the court (*Duddy, J.*) granted separate motions to intervene filed by the Maine Attorney General and the Superintendent of Insurance.  Both State parties opposed Arch's motions to dismiss.

[¶11]  In orders dated January 23, 2020, the court granted Arch's motions to dismiss pursuant to M.R. Civ. P. 12(b)(6) Corinth's complaint and Varney's cross-claim.  Varney timely filed a motion to reconsider, which the court denied. In the interim, Arch moved for entry of a final judgment.  On April 27, 2020, the court granted the motion and entered partial final judgment pursuant to M.R. Civ. P. 54(b)(1) for Arch as to Corinth's claims against Arch and Varney's cross-claim only.  Corinth's claims against Varney remain pending.  Corinth,

---

[2]  Count I alleged that Arch violated the notice requirement of 24-A M.R.S. § 2009-A (2020) and requested a declaratory judgment to that effect.  Count II alleged breach of contract against Arch for failing to provide coverage and requested monetary damages and attorney fees.

6

Varney, and the State timely appealed the partial final judgment. *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A.    Final Judgment

[¶12]  A threshold question is whether this appeal is appropriately before us given that it is not taken from a final judgment that disposes of all claims against all parties. *See Kittery Point Partners, LLC v. Bayview Loan Servicing, LLC,* 2018 ME 35, ¶ 6, 180 A.3d 1091 ("Absent an exception to the final judgment rule, a trial court's decision is not appealable unless it resolves all claims against all parties."). Rule 54(b) of the Maine Rules of Civil Procedure creates a limited exception to the "strong policy against piecemeal review of litigation." *Guidi v. Town of Turner,* 2004 ME 42, ¶ 9, 845 A.2d 1189. "In limited instances, when the resolution of one part of an action may be dispositive of the remaining unresolved components of the action, the parties may seek appellate review of one component alone by obtaining a certification of final judgment pursuant to M.R. Civ. P. 54(b)(1)." *Musson v. Godley*, 1999 ME 193, ¶ 7, 742 A.2d 479. "In its certification, the trial court must make specific findings and a reasoned statement explaining the basis for its certification under M.R. Civ. P. 54(b)(1)." *Guidi,* 2004 ME 42, ¶ 9, 845 A.2d 1189 (citing *Bates v. Eckhardt Telecomms., Inc.,*

2002 ME 69, ¶¶ 5-7, 794 A.2d 648; *Citicorp Mortg., Inc. v. Keneborus*, 641 A.2d 188, 190 (Me. 1994); *Key Bank of Me. v. Park Entrance Motel*, 640 A.2d 211, 212 (Me. 1994)). In the absence of those specific findings and statement, we will not review a partial final judgment entered pursuant to M.R. Civ. P. 54(b). *See Kittery Point Partners,* 2018 ME 35, ¶ 8, 180 A.3d 1091. We review the trial court's grant of Rule 54(b)(1) certification for abuse of discretion. *Guidi,* 2004 ME 42, ¶ 10, 845 A.2d 1189.

[¶13] In determining whether to enter partial final judgment pursuant to Rule 54(b)(1), the trial court must address certain factors, and we consider the same factors in deciding whether to review the judgment.[3] *See McClare v. Rocha,* 2014 ME 4, ¶ 8, 86 A.3d 22.

---

[3] "When deciding whether the trial court correctly certified a partial final judgment, we consider the following factors:

• The relationship of the adjudicated and unadjudicated claims;

• The possibility that the need for review may be mooted by future developments in the trial court;

• The chance that the same issues will be presented to us more than once;

• The extent to which an immediate appeal might expedite or delay the trial court's work;

• The nature of the legal questions presented as close or clear;

• The economic effects of both the appeal and any delays on all of the parties, including the parties to the appeal and other parties awaiting adjudication of unresolved claims; and

8

[¶14]  Here, the court made specific findings and issued a concise and thoughtful statement of its reasoning that supports its Rule 54(b)(1) certification.  In particular, interlocutory appellate review of Corinth's claims and Varney's cross-claim against Arch entails a single narrow and purely legal question of statutory interpretation, and the resolution of that question may substantially, if not completely, resolve the claims that were not adjudicated in the order of dismissal.  Accordingly, we discern no abuse of discretion and proceed to the merits of the issue raised.  *See id.*

B.    The Notification Requirement of 24-A M.R.S. § 2009-A

[¶15]  This appeal presents the question of whether 24-A M.R.S. § 2009-A requires a provider of surplus lines insurance that intends not to renew a policy to notify the insured, prior to the end of its policy term, of its intention not to renew.  The statutory notice requirement states:

> Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be effective unless received by the named insured at least 14 days prior to the effective date of cancellation or, when the cancellation is for nonpayment of premium, at least 10 days prior to the effective date of cancellation.

24-A M.R.S. § 2009-A.

---

• Miscellaneous factors such as solvency considerations, the res judicata or collateral estoppel effect of a final judgment and the like."

*McClare v. Rocha*, 2014 ME 4, ¶ 8 n.1, 86 A.3d 22.

[¶16]  The trial court construed the statute to require such prior notice only in the case of "cancellation *and* nonrenewal" (emphasis added), i.e., when an insurer cancels a policy before the expiration of its stated term and also does not renew that same policy.  All parties acknowledge that Arch did not cancel the policy.  Because Arch did not cancel the policy, the court reasoned that no violation of section 2009-A occurred and dismissed the complaint.  "We review the grant of a motion to dismiss de novo . . . ."  *MSAD 6 Bd. of Dirs. v. Town of Frye Island*, 2020 ME 45, ¶ 36, 229 A.3d 514 (quotation marks omitted).

[¶17]  Corinth, Varney, and the State argue that an insurance policy cannot be both cancelled and not renewed.  They contend that the statutory interpretation proposed by Arch and adopted by the court produces an absurd result that either nullifies the statute's notice requirement entirely or renders the statutory reference to "nonrenewal" mere surplusage.  *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 22, 107 A.3d 621 ("We reject [statutory] interpretations that render some language mere surplusage.").  Corinth, Varney, and the State, citing 1 M.R.S. § 71(2) (2020) ("The words 'and' and 'or' are convertible as the sense of a statute may require."), proffer that the phrase "cancellation and nonrenewal" should be read as "cancellation *or* nonrenewal" (emphasis added) when the plain language is viewed in the context of the Maine Insurance Code.

10

They also argue that, should we determine that the statute is ambiguous, their interpretation follows the Legislature's intent, as demonstrated by the legislative history.

[¶18]  Arch counters that the plain language of the statute provides that the notice requirement is triggered only when an insurer cancels and also does not renew a policy.  Arch also argues that interpreting the statute in the manner advanced by Corinth, Varney, and the State would render it unconstitutionally vague.  We disagree with Arch's first argument, conclude that the statute is ambiguous, decide that the ambiguity can be resolved by recourse to legislative history, and interpret the statute to require written notice before nonrenewal of a surplus lines insurance policy.  We therefore vacate the order of dismissal and remand for further proceedings, including consideration of Arch's constitutional argument.[4]

1.  Meaning of "Cancellation" and "Nonrenewal"

[¶19]  "We review questions of statutory interpretation de novo, looking first to the plain meaning in order to discern legislative intent, viewing the relevant provisions in the context of the entire statutory scheme to generate a

---

[4] For the reasons set forth below, we do not reach Arch's constitutional arguments on this appeal. *See infra* ¶¶ 38-39.

harmonious result." *State v. Treadway*, 2020 ME 127, ¶ 17, --- A.3d --- (alterations omitted) (quotation marks omitted). "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Dickau*, 2014 ME 158, ¶ 19, 107 A.3d 621.

[¶20] In its entirety, section 2009-A reads:

> **1. Notice.** Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be effective unless received by the named insured at least 14 days prior to the effective date of cancellation or, when the cancellation is for nonpayment of premium, at least 10 days prior to the effective date of cancellation. A postal service certificate of mailing to the named insured at the insured's last known address shall be conclusive proof of receipt on the 5th calendar day after mailing.
>
> **2. Exemption.** Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall not be subject to sections 2908 [cancellation and nonrenewal of casualty insurance policies] and 3007 [cancellation and nonrenewal of property insurance policies].

24-A M.R.S. § 2009-A.

[¶21] We begin with the statutory terms to determine whether they are ambiguous. *Dickau*, 2014 ME 158, ¶ 19, 107 A.3d 621. A term is ambiguous only if it is "susceptible to different meanings." *Mainetoday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104. "A plain language interpretation should not be confused with a literal interpretation, however." *Dickau*, 2014 ME 158, ¶ 20, 107 A.3d 621. We will not close our inquiry if a literal interpretation of the

statute's language would lead to "illogical or absurd" results. *Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609 (quotation marks omitted). We will instead expand the scope of the inquiry to the "context of the whole statutory scheme" to divine the Legislature's intent. *State v. Mourino*, 2014 ME 131, ¶ 8, 104 A.3d 893.

[¶22] Neither "cancellation" nor "nonrenewal" is defined in Maine's surplus lines insurance law. *See* 24-A M.R.S. §§ 2001-2020 (2020). However, both are defined in other sections of the Maine Insurance Code, and they are mutually exclusive events. "'Cancellation' means termination of a policy at a date other than its expiration date," 24-A M.R.S. §§ 2908(1)(A), 3007(1)(A) (2020), whereas "'nonrenewal' means termination of a policy at its expiration date," 24-A M.R.S. §§ 2908(1)(D), 3007(1)(D) (2020). Arch contends that these definitions do not apply to surplus lines policies because section 2009-A provides that "[c]ancellation and nonrenewal of surplus lines coverage . . . shall not be subject to sections 2908 and 3007." 24-A M.R.S. § 2009-A(2). We disagree. The legislative history discussed below contradicts Arch's view, *see infra* ¶¶ 31-35, and other provisions of the Maine Insurance Code and the accepted definitional standards of insurance law confirm that "cancellation"

and "nonrenewal" are mutually exclusive events. *See, e.g.*, 2 Couch on Insurance § 30.1 (3d ed. 2005); 3 Appleman on Insurance § 16.5 (2d ed. 1998).

[¶23]  Insurance law is a specialized area of law, and these terms have specific definitions within that area. *See, e.g.*, 2 Couch on Insurance § 30.1 (3d ed. 2005) ("The right to cancel is the right to terminate a policy prior to its expiration, as distinguished from a policy's lapse, or expiration by its own terms."); 3 Appleman on Insurance § 16.5 (2d ed. 1998) ("Unless . . . the policy is terminated by action of the parties, it will usually continue in force for the term for which it was written."); *cf.* 24-A M.R.S. § 2421 (2020) (clarifying that renewal occurs when a policy has expired by its own terms).

[¶24]  Industry definitions confirm the categorical distinction between cancelling a policy and not renewing a policy. *Cf.* 2 Couch on Insurance § 29:3 (3d ed. 2005) ("Nonrenewal situations are subject to neither statutory requirements governing the cancellation of existing policies, nor statutory limitations on the right to cancel."); 3 Appleman on Insurance § 16.5 n.7 (2d ed. 1998) ("Cancellation vs lapse: Cancellation of an insurance policy means the termination of the policy *prior to the expiration* of the policy period *by act* of one or all of the parties, while termination of a policy means *expiration* of a policy *by lapse* of the policy period." (emphasis added)).

14

[¶25]   These specialized definitions are instructive in considering section 2009-A's language in light of the overall purpose and structure of the Maine Insurance Code. *See Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621. Although it does not contain a specific definition of the word "renewal," the Maine Insurance Code explains that "[a]ny policy terminating by its terms at a specified expiration date . . . may be renewed or extended at the option of the insurer . . . without requiring issuance of a new policy." 24-A M.R.S. § 2421.

[¶26]   It therefore follows that it is impossible for an insurer both to cancel a policy before its specified termination date and to renew the same policy upon its specified termination date. Any policy issued by an insurer after cancellation would be a new policy, not a renewal of the cancelled policy. Because an insurer can never simultaneously cancel and "nonrenew" a policy, construing section 2009-A to require notice only when an insurer intends to do both would effectively write the notice requirement entirely out of the statute, producing the kind of "illogical or absurd" result that we seek to avoid. *See Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 12, 179 A.3d 312; *Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621 ("[W]e must interpret the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation.").

[¶27]   Another factor that militates against Arch's interpretation of section 2009-A is that it is a policyholder protection statute.  *See Me. Bonding & Cas. Co. v. Knowlton*, 598 A.2d 749, 750 (Me. 1991).  A notice of cancellation or nonrenewal enables a policyholder to act to avoid any lapses in insurance coverage.  We construe these types of consumer protections laws "liberally in favor of insureds and strictly against insurers."   *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 34, 989 A.2d 733.

[¶28]  We conclude that, when the specialized insurance terms used in section 2009-A are considered in the context of the Maine Insurance Code, the meaning of the section is clear—it requires insurers to give prior notice of their intent *either* to cancel a policy or not to renew a policy.  *See* 1 M.R.S. § 71(2). We acknowledge, however, that the statute does not clearly specify a deadline by which notice of nonrenewal is to be given.  It requires that notice of "[c]ancellation and nonrenewal" be provided by the insurer "at least 14 days prior to the effective date of *cancellation* or, when the cancellation is for nonpayment of premium, at least 10 days prior to the effective date of *cancellation*."  24-A M.R.S. § 2009-A (emphasis added).

[¶29]  The initial reference to the two different means of terminating policy coverage—cancellation and nonrenewal—indicates that the notice

requirement applies to both, but the references to "effective date of cancellation" without mention of nonrenewal indicate otherwise. The inconsistency renders the statute ambiguous. *See Dickau*, 2014 ME 158, ¶ 19, 107 A.3d 621.

[¶30] A statute is ambiguous if it can reasonably be interpreted in more than one way without departing from the language of the statute. *See Me. Ass'n of Health Plans v. Superintendent of Ins.,* 2007 ME 69, ¶ 35, 923 A.2d 918. In this instance, section 2009-A can be interpreted to require both notice of cancellation and notice of nonrenewal to be given fourteen days before their effective dates, but it can also be interpreted to set the deadline for notice of cancellation at fourteen days before its effective date but not to specify a deadline for notice of nonrenewal. The ambiguity calls for us to look behind the face of the statute to divine the Legislature's intent. *See Davis v. McGuire*, 2018 ME 72, ¶ 17, 186 A.3d 837.

2.   Legislative History

[¶31] If a statute's language, structure, and purpose do not yield a definitive interpretation, we incorporate other indicia of legislative intent, most notably the legislative history, into the analysis. *See State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 34, 995 A.2d 651. Our evaluation of the legislative

history—as a vehicle for determining the Legislature's intent—is conducted as a matter of law. *See Wawenock*, 2018 ME 83, ¶ 13, 187 A.3d 609.

[¶32] "Legislative history" is a broad term that encompasses the entire history of a statute, from proposal through enactment and amendment. *See id.* ¶ 15. It includes "the history of relevant codifications, amendments, and repeals; the legislative committee file[;] . . . reports and recommendations from legislative task forces, committees, and working groups; [and] narrative summaries and statements of fact accompanying proposed legislation and committee amendments." *Id.* (alterations omitted) (citations omitted) (quotation marks omitted).

[¶33] Section 2009-A as originally drafted read:

> Cancellation and nonrenewal by an insurer of surplus lines coverage subject to this chapter shall be subject to sections 2908 and 3007. No surplus lines policy issued in this State may provide for the cancellation *or* nonrenewal of coverage in a manner or for a reason inconsistent with those sections.

L.D. 118 (114th Legis. 1989) (emphasis added). Though there are notable changes, the law was enacted in its present form with a statement of fact that reads:

> This amendment exempts surplus lines insurance from the cancellation hearing requirements of state law. The present applicability of that law is uncertain. The amendment adds a

14-day notice requirement, or 10 days if for nonpayment of premiums, for cancellation *or* nonrenewal of surplus lines.

L.D. 118, Statement of Fact (114th Legis. 1989) (emphasis added).[5] Both the statement of fact and the statute's original wording show that the Legislature viewed cancellation and nonrenewal as different events and intended to require fourteen-day advance notice for each, unless the cancellation was due to nonpayment of premium. They also evince the Legislature's intent to exempt surplus lines insurers from the more stringent procedural requirements found in sections 2908(6) (casualty insurance) or 3007(6) (property insurance), both of which provide for the right to a hearing. That intent comports with the status of surplus lines insurers as out-of-state firms that would face greater logistical hurdles defending at a hearing a cancellation or nonrenewal decision. *See Surplus-Lines Insurance*, Black's Law Dictionary (10th ed. 2014) (defining "surplus lines insurance" as "[i]nsurance with an insurer that is not licensed to transact business within the state where the risk is located").

[¶34] A summary of the proposed legislation provided by the Legislature's Office of Policy and Legal Analysis reinforces the conclusion that

---

[5] The statement's reference to "hearing requirements" suggests that the exemption in section 2009-A(2) is limited only to the process requirements of sections 2908 and 3007, not their respective definitions of "cancellation" and "nonrenewal." L.D. 118, Statement of Fact (114th Legis. 1989).

the intent of the legislation was to require fourteen-day advance notice of either cancellation or nonrenewal:

> This amendment replaces the bill, but retains certain provisions. It exempts surplus lines insurance from the cancellation hearing requirements of State law. The present applicability of that law is uncertain. The amendment adds a 14 day notice requirement (10 days if for non-payment of premiums) for cancellation *or* non-renewal of surplus lines.

Office of Policy and Legal Analysis, Joint Standing Committee Bill Summaries, L.D. 118 (Aug. 1989) (emphasis added).

[¶35] Ultimately, the facial ambiguity in the statute is resolved by the unambiguous legislative history manifesting the Legislature's intent to require surplus lines insurers to give fourteen-day advance notice of nonrenewal as a policyholder protection measure, *see Beal*, 2010 ME 20, ¶ 34, 989 A.2d 733.

3. Agency Deference

[¶36] A final factor supporting the foregoing interpretation is that the Bureau of Insurance, which administers the Maine Insurance Code, interprets the statute to set the same deadline for advance notice of nonrenewal as for advance notice of cancellation. "If the meaning of [a] statute is ambiguous, we will uphold the agency's interpretation in its field of expertise," as long as the interpretation is reasonable and as long as the statute does not compel a

contrary interpretation. *See Me. Ass'n of Health Plans,* 2007 ME 69, ¶ 32, 923 A.2d 918.

### III. CONCLUSION

[¶37] Given the meaning of "cancellation" and "nonrenewal," the legislative history, and the interpretation of the Superintendent of Insurance, the "sense of the statute" points to a requirement of fourteen-day advance notice in the case of either cancellation or nonrenewal. *See* 1 M.R.S. § 71(2). We therefore hold that section 2009-A(1) requires a surplus lines insurer to give written notice of its intent either to cancel a policy or not to renew a policy at least fourteen days before the effective date of the cancellation or nonrenewal. 24-A M.R.S. § 2009-A. Because the court decided otherwise, we vacate the order of dismissal and remand for further proceedings.

[¶38] Our holding does not address Arch's constitutional objection to the statute because the issue was neither developed nor addressed in the Business and Consumer Docket. The trial court, agreeing with Arch's interpretation of the statute, did not reach the constitutional question. We typically do not address questions left undeveloped and undecided by the trial court. *See, e.g.,* *Hill v. Kwan*, 2009 ME 4, ¶ 1, 962 A.2d 963 (declining to reach a constitutional question raised in a complaint when the lower court dismissed the case without

deciding the constitutional issue); *Widewaters Stillwater Co., LLC v. Bangor Area Citizens Organized for Responsible Dev.*, 2002 ME 27, ¶ 11, 790 A.2d 597 ("We do not reach constitutional issues when it is unnecessary to do so. Because of the lack of findings [in the trial court], it is not clear that we must reach this constitutional issue." (citations omitted)).

[¶39] Further, Arch's constitutional void-for-vagueness argument may implicate matters outside the current record, such as how Arch and other insurers have in fact interpreted the statute. *See Ne. Occupational Exch., Inc. v. State*, 540 A.2d 1115, 1117 (Me. 1988) (economic regulations are not unconstitutionally vague "if the affected person can understand what the regulations require, even though some doubt may arise when marginal cases are considered"). For these reasons, we leave to the trial court consideration in the first instance of the statute's constitutionality.

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with the opinion.

22

Eric J. Wycoff, Esq. (orally), and Kyle M. Noonan, Esq., Pierce Atwood LLP, Portland, for appellant Corinth Pellets, LLC

Aaron M. Frey, Attorney General, Thomas C. Sturtevant, Jr., Asst. Atty. Gen., and Lisa A. Wilson, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellants Maine Attorney General and Maine Superintendent of Insurance

Martha C. Gaythwaite, Esq., and Brett R. Leland, Esq. (orally), Verrill Dana LLP, Portland, for appellant Varney Agency Inc.

James M. Bowie, Esq. (orally), Thompson Bowie & Hatch LLC, Portland, and Joseph J. Blyskal, Esq., and Regen O'Malley, Esq., Gordon Rees Scully Mansukhani LLP, Glastonbury, Connecticut, for appellee Arch Specialty Insurance Company

Business and Consumer Docket docket number CV-2019-37
FOR CLERK REFERENCE ONLY