STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-3

SULTAN CORP.,

Plaintiff

v.

DECISION AND ORDER

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION
and MAINE BOARD OF
ENVIRONMENTAL PROTECTION

Defendant

The matter before the court is petitioner Sultan Corp.'s ("Sultan") 80C appeal of a

January 17, 2019 decision by the Maine Board of Environmental Protection (the "Board")

upholding a "Cleanup Order" against Sultan.

Background

This case concerns a property located at 7 Chestnut Street in Auburn, Maine, consisting

of three parcels (the "Site"). (R. Tab 66, Ex. C-8.) The Site has one fifteen-unit apartment

building located on it. (*Id.*) Sultan has owned the Site since 2003. (R. Tab 66, Ex. C-9.) Sultan

acquired the Site from Atlantic Holdings, LLC ("Atlantic Holdings"). (R. Tab 66, Ex. C-1, at 4.)

Atlantic Holdings, in turn, acquired the Site from Parkview Apartments, LLC, also during 2003.

(*Id.*) Parkview Apartments, LLC acquired the Site from Parkview Associates, LLC on July 21,

2000. (*Id.*) Parkview Associates, LLC acquired the Site from Beal's Laundry on October 31,

1985. (*Id.*)

Beal's Laundry operated dry cleaning facilities on the Site from approximately 1950 to

1986. (R. Tab 66, Ex. C-17, at 1.) In 2013, the Department of Environmental Protection ("DEP")

1

began to test former dry cleaning sites for hazardous substances. (R. Tab 82, at 16:20-23.) The DEP, through a consultant, conducted testing at the Site and found the volatile organic compounds Trichloroethylene ("TCE") and Perchloroethylene ("PCE") contaminating the soil and groundwater. (R. Tab 66, Ex. C-4.) The Commissioner believed that these compounds posed a health risk to people on living on the Site because TCE and PCE vapors were found in dangerous quantities in apartments on the Site. (R. Tab 5, at 2-3.) The DEP installed a sub-slab depressurization system ("SSDS") to mitigate the potential health risk to people who lived on the Site. (R. Tab 5, at 10.) The SSDS redirects vapors emanating from soil, soil gas and groundwater away from occupied spaces in the building. (R. Tab 5, at 3.)

The Commissioner believed that a long-term solution to the Site's contamination was necessary. The SSDS lowers the concentration of dangerous vapors in the occupied areas on the Site, but it does not remove the source of those vapors. (R. Tab 5, at 11.) The DEP found that contamination levels are unlikely to significantly decrease in the foreseeable future. (*Id.*) Without a permanent solution, the SSDS would need to be maintained indefinitely. (*Id.*) The Commissioner consulted with Ransom Consulting, Inc. ("Ransom"), to analyze what options were available for a more permanent solution. (*Id.*) Ransom evaluated seven possible options, each assigned a letter from A through G.

On May 10, 2018, the Commissioner issued an order designating the Site an uncontrolled hazardous substance site pursuant to 38 M.R.S. § 1365(1). (R. Tab 5, at 4.) Once a site has been designated as an uncontrolled hazardous substance site, the statute provides that the Commissioner of the DEP ("Commissioner") may "[o]rder any responsible party dealing with the hazardous substances to cease immediately or to prevent that activity and to take an action necessary to terminate or mitigate the danger or likelihood of danger." 38 M.R.S. § 1365(1)(B)

2

(2021). Pursuant to this authority, the Commissioner's order requires Sultan to submit a plan for remediation of the Site following Alternative E from Ransom's report.[1] (R. Tab 5, at 12.) The original order also sought to recoup the DEP's costs, but the Commissioner consented to that provision's removal on appeal. (R. Tab 5, at 4.)

Sultan appealed the Commissioner's order to the Board on June 7, 2018. On appeal, Sultan relied in part on a third-party defense it refers to as the "innocent landowner defense."[2] This defense is found in 38 M.R.S. § 1367(3), which provides, in the relevant part:

> [a] person who would otherwise be a responsible party shall not be subject to liability under this section, if he can establish by a preponderance of the evidence that threats or hazards posed or potentially posed by an uncontrolled site, for which threats or hazards he would otherwise be responsible, were caused solely by . . . [a]n act or omission of a 3rd party who is not that person's employee or agent.

Sultan argued before the Board that this defense applied to its conduct in this case. § 1367 concerns actions by the DEP to recoup costs it incurs resulting from "hazardous substances at the site or from the acts or omissions of a responsible party with respect to those hazardous substances and for the abatement, cleanup or mitigation of the threats or hazards posed or potentially posed by an uncontrolled site . . ." The Commissioner argued that because the order was no longer seeking to recoup costs, the innocent landowner defense was not available.

Joseph Dunne ("Mr. Dunne"), agent for Sultan, testified before the Board. Mr. Dunne testified that he became aware of the property in 2003, when an agent for Parkview Apartments, LLC, asked him if Sultan would be interested in acquiring the Site. (R. Tab 82, at 167: 1-4.) Mr.

---

[1] Alternative E calls for air sparging to strip contaminants from soil and groundwater in conjunction with soil vapor extraction to control vapor-phase contaminant migration. (R. Tab 5, at 11-12.) The technical details of this process, or of any of the alternatives, are not at issue in this lawsuit.

[2] To avoid confusion, the court will adopt Sultan's terminology. For the purposes of this order, when the court uses the phrase "innocent landowner defense," it is referring to the exception to responsible party status provided by § 1367(3).

Dunne testified that Sultan did not have the funds to purchase the property at that time, but that he notified an agent of Atlantic National Trust because he believed they might be interested in acquiring the property. (*Id.* at 167: 4-8.) Mr. Dunne testified that one of Atlantic National Trust's entities, Atlantic Holdings, purchased the Site from Parkview Apartments, LLC. (*Id.* at 167: 21-23.) Mr. Dunne testified that Sultan purchased the property from Atlantic Holdings shortly afterwards because "Atlantic was able to assist with the financing." (*Id.* at 167: 25, at 168:1-4.) Mr. Dunne testified that he had walked through the Site and had been told by Parkview's agent that the Site was given a "clean bill of health," but that he did not do any additional investigation. (*Id.* at 167: 9-21; *Id.* at 168: 20-21.)

Mr. Dunne testified that Sultan performed a title search, but only back to when Atlantic Holdings purchased the property. (*Id.* at 171: 10-11.) Mr. Dunne testified that he assumed that Atlantic Holdings would have done a title search back to when there was a title policy, but did not testify that he knew Atlantic Holdings had actually done so. (*Id.* at 171: 5-15.) Mr. Dunne testified that he did not conduct a survey of the property. (*Id.* at 171: 16-17.) Mr. Dunne testified that Atlantic Holdings did not require him to conduct a Phase 1 Environmental Site Assessment, and that he has never done a Phase 1 Environmental Site Assessment for any of the "probably 400" buildings he has bought. (*Id.* at 176: 1-4; *Id.* at 177: 9-10; *Id.* at 178: 6-9.) Mr. Dunne testified that he did not know of anyone else who conducted Phase 1 Environmental Site Assessments for commercial buildings they purchased. (*Id.*)

The Board upheld the Commissioner's order, ruling that the Commissioner had the authority to order Sultan to remediate the site following Alternative E from Ransom's report. (R. Tab 5, at 14.) The Board held that it need not reach the issue of whether the innocent landowner defense, which the Board refers to as the "third-party defense," is a defense to a § 1365 order

4

because Sultan failed to meet its burden to prove the elements of the defense even if it applied. (R. Tab 5, at 16.) The Board further held that the Commissioner had established that all of the ordered actions were "necessary to terminate or mitigate the danger or likelihood of danger posed by the hazardous substances at the Site to the public health, to the safety of persons and the environment." (R. Tab 5, at 16.)

Standard

The court directly reviews an agency decision "for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Merrill v. Me. Pub. Emples. Ret. Sys.*, 2014 ME 100, ¶ 13, 98 A.3d 211 (quotation omitted). The court acting in an appellate capacity will not vacate an agency's factual findings unless they are clearly erroneous. *Suzman v. Comm'r, Dep't of Health & Human Servs.*, 2005 ME 80, ¶ 24, 876 A.2d 29. The court will sustain the administrative decision if, "on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "Inconsistent evidence will not render an agency decision unsupported." *Id.*

The court reviews an agency's interpretation of its statute by looking to the plain language of the statute. *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 15, 60 A.3d 1272. When the statute is ambiguous, the court will review "whether the agency's construction is reasonable." *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 11, 926 A.2d 1197 (quotation omitted).

Discussion

Sultan makes three arguments on appeal:

(1) The Board erred by failing to hold that the innocent landowner defense was available;

5

(2) The Board erred by determining that Sultan did not prove the elements of the innocent landowner defense; and

(3) The Board erred by reaching the elements of the innocent landowner defense without first determining whether the innocent landowner defense was available to Sultan.

Availability of Innocent Landowner Defense

Sultan argues that it would be an absurd result to find that the innocent landowner defense applies to actions to recoup costs for actions taken by the DEP to mitigate the danger from hazardous substances on a site under § 1367, but does not apply to orders issued to private parties directing them to mitigate similar dangers under § 1365. Thus, Sultan argues that the Board erred by not affirming that the defense was available here.

§ 1367, which provides for the innocent landowner defense, specifically states that a party satisfying the elements of the defense "shall not be subject to liability *under this section*." Sultan asks the court to read § 1365 as limited to defining the parameters for designating a site as an uncontrolled hazardous substance site and issue orders directing responsible parties to cease, prevent, terminate or mitigate dangers arising or potentially arising from that site. (*See* Pet'r's Br. 9.) Sultan argues that § 1367 goes on to define the full scope of a party's rights and liabilities, and to define the defenses available to a party, applicable to any DEP order or lawsuit. (*Id.*) However reasonable this interpretation may be, it conflicts with the plain language of the statute. § 1367 specifically states that the enumerated defenses relieve a party of liability under that section, not liability from DEP orders more generally. The DEP order at issue in this case was issued under a different section, § 1365. The innocent landowner defense does not apply.[3]

---

[3] The court notes that this is an odd statutory scheme. Under this statute, a landowner has several defenses available to him or her when sued under § 1367 in an action to recoup costs for actions the DEP has already taken to mitigate the actual or potential dangers from hazardous substances on a site, but none of these defenses are available if the DEP designates the site as an uncontrolled hazardous substances site under § 1365 and orders the landowner directly to perform the same mitigation actions. As Sultan suggests, this creates a structural incentive for the DEP to order

Elements of the Innocent Landowner Defense

Even if the innocent landowner defense applied to actions under § 1365, the Board did

not err in holding that Sultan failed to satisfy the elements of that defense. To reiterate, § 1367

provides, in the relevant part:

> [a] person who would otherwise be a responsible party shall not be subject to
> liability under this section, if he can establish by a preponderance of the evidence
> that threats or hazards posed or potentially posed by an uncontrolled site, for
> which threats or hazards he would otherwise be responsible, were caused solely
> by . . . [a]n act or omission of a 3rd party who is not that person's employee or
> agent.

The statute goes on to clarify:

> A person seeking relief from liability for the acts or omissions of a 3rd party shall
> also demonstrate by a preponderance of the evidence that that person exercised
> due care with respect to the hazardous substance and uncontrolled site concerned,
> taking into consideration the characteristics of that substance and site, in light of
> all relevant facts and circumstances and that that person took precautions against
> foreseeable acts or omissions of any such 3rd party and the consequences that
> could foreseeably result from such acts or omissions.
>
> A. For purposes of this subsection, a person may demonstrate the exercise of due
> care with respect to any uncontrolled site that that person has acquired after
> hazardous substances were located on that uncontrolled site, if that person
> shows that at the time that person acquired the uncontrolled site the person did
> not know and had no reason to know that any hazardous substance that is the
> subject of the release or threatened release was disposed on, in or at the
> uncontrolled site.
>
> B. To establish that a person meets the criteria of paragraph A, a person must
> have undertaken, at the time of acquisition, all appropriate inquiry into the
> previous ownership and uses of the property consistent with good commercial
> or customary practice in an effort to minimize liability. For purposes of this
> paragraph, the court shall take into account any specialized knowledge or
> experience on the part of the person, the relationship of the purchase price to
> the value of the property if uncontaminated, commonly known or reasonably
> ascertainable information about the property, the obviousness of the presence

---

landowners to take mitigation actions themselves under § 1365 to limit the potential defenses available to a
landowner subject to such an order. However, the language of § 1367 is clear, and the oddness does not rise to the
level of an absurdity such that the court is compelled to interpret it contrary to its plain meaning. *See Cf. Corinth
Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 21, 246 A.3d 586.

or likely presence of contamination of the property, and the ability to detect that contamination by appropriate inspection . . .

§ 1367(3). The Board found that Sultan failed to prove by a preponderance of the evidence that it had exercised due care with respect to the hazardous substances and the Site because Sultan failed to show that it had undertaken appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice, as required by § 1367(3)(B).

The Board heard testimony directly from Mr. Dunne, who by his own admission was Sultan's agent for all time periods relevant to this lawsuit, that he had only done a title search back to when Atlantic Holdings acquired the property, which was only a few months prior to Sultan's acquisition of the property. (R. Tab 82, at 171: 10-11.) Mr. Dunne testified that he assumed that Atlantic Holdings had done its own title search, but did not testify that he had confirmed that Atlantic Holdings had actually done so. (*Id.* at 171: 5-15.) Mr. Dunne did not conduct a survey of the property, nor did he conduct a Phase I Environmental Site Assessment. (*Id.* at 171: 16-17; *Id.* at 176: 1-4.) The only inquiry Mr. Dunne made was a walk-through of the building, during which he received verbal assurances from Atlantic Holdings's agent that the building had a "clean bill of health." (*Id.* at 167: 9-21; *Id.* at 168: 20-21.)

The Board was well within its rights to conclude that Sultan had failed to undertake appropriate inquiry into the previous ownership and uses of the property on this record. The record shows that Sultan, through Mr. Dunne, conducted almost no inquiry into the prior uses of the property. The Board's factual findings are supported by the record, and those findings support its conclusion that Sultan failed to satisfy the innocent landowner defense.[4]

---

[4] Sultan also argues that the Board erred by failing to rule whether the innocent landowner defense applied. According to Sultan, if the defense does not apply, the Board had no jurisdiction to opine on the merits of the

8

The entry is

> The decision of the Maine Board of Environmental
> Protection is AFFIRMED.
>
> The Clerk is directed to enter this order into the docket by
> reference pursuant to M.R.Civ.P. 79(a).

Date: Jul 30, 2020

Harold Stewart, II
Justice, Superior Court

---

defense. Even if Sultan is correct, this is harmless error. The innocent landowner defense does not apply to actions under § 1365.