MAINE SUPREME JUDICIAL COURT                        Reporter of Decisions
Decision:     2026 ME 12
Docket:       And-25-76
Argued:       November 12, 2025
Decided:      February 10, 2026

Panel:        STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.


CATHERINE DUDLEY

v.

HUDSON SPECIALTY INSURANCE COMPANY et al.


LIPEZ, J.

[¶1]  Catherine Dudley appeals from an order of the Superior Court (Androscoggin County, *Archer, J.*) entering summary judgment in favor of Hudson Specialty Insurance Company.  The Superior Court concluded that 24-A M.R.S. § 2009-A(1) (2025) does not require an insurer to send notice of nonrenewal of a policy to its insured when the insurer has made an offer to renew the policy.  Because we hold that this conclusion is contrary to the plain language of the applicable statutes, we vacate the judgment and remand for further proceedings.

## I.  BACKGROUND

[¶2]  This case is a reach-and-apply action, *see* 24-A M.R.S. § 2904 (2025), filed by Dudley after she was injured at a property insured by Hudson and

2

owned by Michel Kanyambo and Speciose Mahirwe.  We draw the following facts from the parties' statements of material facts and the summary judgment record.  *See Progressive Nw. Ins. Co. v. Metro. Prop. & Cas. Ins. Co.*, 2021 ME 54, ¶ 2, 261 A.3d 920.

[¶3]  In 2017, Hudson issued Kanyambo and Mahirwe a general liability insurance policy that covered their property from September 14, 2017, to September 14, 2018.  Kanyambo and Mahirwe did not negotiate directly with Hudson.  Instead, they retained Champoux Insurance Group, who in turn partnered with New England Excess Exchange Limited to procure the policy from Hudson.

[¶4]  On July 31, 2018, a New England Excess employee emailed a Champoux employee a "renewal quote" for the policy.  The Champoux employee then called Kanyambo and informed him of the quote, although the parties dispute the full extent of what was discussed in that phone call.  What is undisputed is that Kanyambo and Mahirwe never received a written copy of the quote nor communicated directly with either New England Excess or Hudson about the offer to renew.  Kanyambo and Mahirwe did not take any steps to accept the quote or renew the policy.  Neither Hudson nor New England Excess

sent them written notice prior to September 14, 2018, informing them that their insurance coverage would terminate on that date.

[¶5]  On September 23, 2018, nine days after the end of the policy term, Dudley was injured on the property.  She filed a lawsuit against Kanyambo and Mahirwe.  Hudson refused to defend the suit, claiming that Kanyambo and Mahirwe's policy had expired on September 14.  Dudley subsequently settled her claims with Kanyambo and Mahirwe, resulting in a stipulated judgment against them.  She then initiated this reach-and-apply action against Hudson.[1]

[¶6]  Dudley moved for partial summary judgment on the issue of whether the policy was in effect on the date of the injury.  Hudson moved for summary judgment on the same issue.  On February 6, 2025, the court granted Hudson's motion and denied Dudley's.  The court concluded that because Kanyambo and Mahirwe received notice of the renewal quote from Champoux, Hudson was not required to send them written notice that their policy would terminate on its expiration date.  The court found that there was no dispute of material fact and that the policy was not in effect on the date of Dudley's injury,

---

[1] Count I sought satisfaction from Hudson of the settlement amount, Count II alleged that Hudson breached its insurance contract with Kanyambo and Mahirwe, and Count III asserted negligence by Champoux.  The court granted summary judgment for Champoux on Count III.  Dudley does not appeal from that decision.

4

barring her from pursuing her reach-and-apply and contract claims against Hudson. *See* 24-A M.R.S. § 2904. This timely appeal followed. *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶7]  We review an entry of summary judgment "de novo, viewing the evidence in the light most favorable to the nonprevailing party to determine whether the parties' statements of material facts and the record evidence . . . demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733 (quotation marks omitted).

### A.    Insurers must send written notice of nonrenewal.

[¶8]  This case implicates one of two provisions of the Maine Insurance Code, codified at Title 24-A: section 2908, which applies to all casualty insurance contracts, and section 2009-A, which applies only to surplus-lines coverage.[2]  Both provisions require insurers to send written notice of "nonrenewal" to an insured; in the absence of such notice, the nonrenewal is

---

[2]  Surplus-lines coverage is generally defined as "[i]nsurance offered by a nonadmitted insurer that is not available from a licensed insurer within the state where the risk is located." *Surplus-Lines Insurance*, Black's Law Dictionary (12th ed. 2024); *see also Corinth Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 5 n.1, 246 A.3d 586.

not effective.  *See* 24-A M.R.S. §§ 2009-A(1), 2908(5)(B) (2025); *Corinth Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 37, 246 A.3d 586 (holding that section 2009-A requires insurers to give advance written notice in event of either cancellation or nonrenewal).  Under section 2009-A, the nonrenewal of a surplus-lines policy "shall not be effective unless [written notice of nonrenewal is] received by the named insured at least 14 days prior to the effective date."[3]  24-A M.R.S. § 2009-A(1); *Corinth Pellets*, 2021 ME 10, ¶ 37, 246 A.3d 586.  Section 2908 provides that "[n]onrenewal . . . shall not be effective prior to 30 days after receipt of written notice by the insured."  24-A M.R.S. § 2908(5)(B).

[¶9]  The parties dispute whether Hudson is a surplus-lines insurer and therefore whether section 2009-A or 2908 governs.[4]  In this case, where it is undisputed that no notice was ever sent and the injury occurred just nine days after the end of the policy term, this distinction is immaterial.  This is because,

---

[3]  Section 2009-A was recently amended.  *See* P.L. 2025, ch. 348, § 23 (effective Sep. 24, 2025) (to be codified at 24-A M.R.S. § 2009-A).  These amendments, which postdate the filing of Dudley's complaint, affect only the dates by which notices must be received and do not impact the analysis in this case.

[4]  The trial court's characterization of Hudson as a surplus-lines insurer is not supported by the summary judgment record.  *See HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶ 22, 28 A.3d 1158 (explaining that facts not asserted in a party's statement of material facts are not a part of the summary judgment record).

6

for reasons that we will explain, the only pertinent difference between the two notice provisions is the number of days between the date that an insured receives notice of nonrenewal and the earliest date that the nonrenewal may be effective. Both general-casualty and surplus-lines insurers must send notice of nonrenewal in the same circumstances; the failure to do so means the nonrenewal "shall not be effective." 24-A M.R.S. §§ 2009-A(1), 2908(5); *see also Corinth Pellets*, 2021 ME 10, ¶ 37, 246 A.3d 586. Thus, regardless of which statute applies in this case, coverage remained in effect unless Hudson is correct that its offer to renew the insurance policy relieved it of the obligation to send notice of nonrenewal.

## B.    Notice of nonrenewal was required in this case.

[¶10]  As discussed, it is undisputed that Hudson did not send notice of nonrenewal to Kanyambo and Mahirwe. Dudley maintains that, as a result, coverage was in effect on the date of her injury. Hudson counters that "nonrenewal" under the statute requires an affirmative decision by the insurer not to renew a policy, and that because it made no such decision in this case, and in fact offered to renew the policy, the statutory notice requirements do not apply. This appeal thus presents the question of whether the statutory provisions requiring an insurer to send notice of nonrenewal apply when the

policy terminates not because the insurer decided against renewal but because the insured party did not take steps to renew the policy.

[¶11] To answer this question, we examine the statute. Our review is de novo. *See, e.g.*, *Corinth Pellets*, 2021 ME 10, ¶ 19, 246 A.3d 586. "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Dorsey v. N. Light Health*, 2022 ME 62, ¶ 11, 288 A.3d 386 (quotation marks omitted). To ascertain that intent, we look to the plain language of the statute, and "[u]nless the statute itself discloses a contrary intent, words in a statute must be given their plain, common and ordinary meaning." *State v. Marquis*, 2023 ME 16, ¶ 14, 290 A.3d 96 (quotation marks omitted). If the terms of the statute are unambiguous, we will not "look beyond the words of the statute." *Id.* (quotation marks omitted). "A term is ambiguous only if it is susceptible to different meanings." *Corinth Pellets*, 2021 ME 10, ¶ 21, 246 A.3d 586 (quotation marks omitted).

[¶12] Section 2908 defines "[n]onrenewal" as the "termination of a policy at its expiration date." 24-A M.R.S. § 2908(1)(D). In *Corinth Pellets* we concluded that this definition of "nonrenewal" applies as well to section 2009-A, which does not independently define that term. *Corinth Pellets*, 2021 ME 10, ¶ 22, 246 A.3d 586 (rejecting argument that definitions of "cancellation"

and "nonrenewal" in section 2908 do not apply to surplus-lines policies). Although "termination" is not defined within the statute, it is commonly understood to mean "[t]he end of something in time or existence; conclusion or discontinuance," *Termination*, Black's Law Dictionary (12th ed. 2024). *See Marquis*, 2023 ME 16, ¶ 16, 290 A.3d 96 ("In determining the plain meaning of statutory language in the absence of a statutory definition, we frequently look to dictionary definitions."). Thus, even a policy that expires automatically can be said to have "terminat[ed]," or ended, resulting in a "nonrenewal" under sections 2009-A and 2908.

[¶13] Contrary to Hudson's assertion that there is a difference between "nonrenewal" and the circumstances here, the plain language of sections 2009-A and 2908(1)(D) does not require an affirmative act by either the insurer or the insured for nonrenewal to occur. Nowhere in the definition of nonrenewal is there any language suggesting that nonrenewal is a decision made by anyone—it is simply the "termination," or end, "of a policy at its expiration date." And although we conclude that the language is unambiguous, to the extent that the statutes lack clarity we interpret them consistently with our practice of reading the Maine Insurance Code in favor of the insured. *See Corinth Pellets*, 2021 ME 10, ¶ 27, 246 A.3d 586 (explaining that "[w]e construe

these types of consumer protections laws liberally in favor of insureds and strictly against insurers" (quotation marks omitted)); *Me. Bonding & Cas. Co. v. Knowlton*, 598 A.2d 749, 750 (Me. 1991) (noting that a similar notice provision of Title 24-A has a "consumer protection bent").

[¶14]  Therefore, we read sections 2908 and 2009-A as meaning that when a policy will terminate at its expiration date, the insurer must give notice of that impending termination in accordance with section 2908 or section 2009-A, whichever is applicable.  It is undisputed that termination of the policy at its expiration date is what occurred here.  Consequently, Hudson was required either by section 2908 or by section 2009-A to provide Kanyambo and Mahirwe with prior notice of nonrenewal.

[¶15]  Although Hudson argues that this reading will result in an "undeserved windfall" for insureds because it results in the extension of coverage at the expense of the insurer, this contention is unpersuasive. "A notice of cancellation or nonrenewal enables a policyholder to act to avoid any lapses in insurance coverage." *Corinth Pellets*, 2021 ME 10, ¶ 27, 246 A.3d 586 (describing section 2009-A as "a policyholder protection statute").  It is unequivocally the intention of sections 2908 and 2009-A to place on insurance providers the burden of providing adequate notice and to postpone the

termination of policies if such notice is not given. We do not believe that this requirement is particularly burdensome for insurers, who are also statutorily obligated to send notice when they decide to cancel a policy or decline to renew a policy. *See* 24-A M.R.S. §§ 2009-A, 2908.

[¶16] In this case, Hudson did not send Kanyambo and Mahirwe notice prior to the termination of the policy on September 14, 2018. Because the trial court erred in concluding that Hudson was not obligated to send such notice, we vacate the entry of summary judgment in Hudson's favor.[5]

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

Anthony K. Ferguson, Esq. (orally), Fales & Fales, P.A., Lewiston, for appellant Catherine Dudley

Christian H. Hinrichsen, Esq. (orally), Melick & Porter, LLP, Boston, Massachusetts, for appellee Hudson Specialty Insurance Company

Androscoggin County Superior Court docket number CV-2023-111
For Clerk Reference Only

---

[5] We decline Dudley's request for an instruction to the trial court to enter partial summary judgment in her favor and leave that determination for the trial court to make, consistent with this opinion.